UNITED STATES of America, Appellee,

v.

**Burnie McCALL, Appellant.**

No. 288, Docket 73–2260.

United States Court of Appeals, Second Circuit.

Submitted Oct. 4, 1973.

Decided Nov. 27, 1973.

Burnie McCall, appellant pro se.

Paul J. Curran, U. S. Atty., John H. Gross and John D. Gordan, III, Asst. U. S. Attys., New York City, for appellee.

Before MEDINA, FEINBERG and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Burnie McCall appeals from a judgment of conviction entered upon a jury verdict returned December 6, 1972 after a three day trial before Harold R. Tyler, Jr., *District Judge*, in the Southern District of New York, finding McCall guilty of conspiracy to sell narcotic drugs without receiving a written order form from the buyer in violation of 26 U.S.C. §§ 4705(a) and 7237(b) (1964).[1]

On appeal McCall raises two major claims of error, each of which was considered and rejected by the district court: (1) that his conviction was barred by the double jeopardy clause of the Fifth Amendment; and (2) that he was convicted on the basis of illegally

---

1. Sections 4705(a) and 7237(b) were repealed by the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91–513, §§ 1101(b)(3)(A), 1101(b)(4)(A), 84 Stat. 1292 (1970). The repealer, which became effective on May 1, 1971, contained a saving provision, § 1103(a), pursuant to which prosecution for any violations of law occurring prior to the effective date of repeal are not affected by the repeal. See United States v. Ross, 464 F.2d 376, 379–80 (2 Cir. 1972).

seized evidence. Other subordinate claims of error also are raised.

We affirm.

## I.

In early May 1970, co-conspirators Richard Alston and Rose Diggs, at the suggestion of McCall, met in New Orleans. Alston persuaded Diggs to buy heroin from him and McCall on consignment. Later that month, McCall and Alston took an eighth of a kilogram of heroin and an ounce of cocaine to Diggs' house in New Orleans. There they met James Williams and sold him the cocaine. Williams, unknown to them, was a government informant. McCall and Alston then gave the heroin to Diggs on consignment. She paid them for it after selling it to a customer.

On June 6, 1970, Emma Jean Brown, at the request of McCall, gave a package of heroin to Diggs in New Orleans. McCall had entrusted the heroin to Brown to hold while they travelled together by airplane to that city. Thereafter, twice a month from June, 1970 until late February, 1971, Dixie Mae Quinn, Diggs' courier, made trips to New York City to pick up from Alston heroin which had been supplied by McCall. Quinn transported this heroin to Diggs in New Orleans. After selling the heroin, Diggs paid McCall and Alston either by sending Western Union money orders to them in New York or by paying them in person when they were in New Orleans making deliveries to her of additional narcotics.

On November 20, 1972, McCall was charged in a one count indictment in the Southern District of New York with conspiring with Alston, Diggs, Quinn, Brown, Williams and Junius James to sell narcotic drugs without obtaining a written order form from the buyer. After a three day jury trial before Judge Tyler, the jury found McCall guilty on December 6, 1972. The evidence included the testimony of four accomplice witnesses, the testimony of an agent of the Bureau of Narcotics and Dangerous Drugs and documentary corroboration. The evidence established that McCall and Alston sold large amounts of heroin to Diggs for distribution in New Orleans. McCall did not testify and offered no evidence.

On April 2, 1973, Judge Tyler held a hearing to determine whether evidence from an illegal state wiretap had been used in McCall's prosecution. At the conclusion of the hearing, the judge held that there had been no taint and denied McCall's motion to dismiss the indictment on that ground. He also denied McCall's motion to dismiss the indictment on the ground of double jeopardy. On April 6, McCall was sentenced to seventeen years imprisonment. He is presently serving that sentence.

## II.

Appealing pro se,[2] McCall first contends that his conviction was barred by the double jeopardy clause of the Fifth Amendment. On October 6, 1970, prior to the Southern District indictment on which he was convicted, he had been indicted in the Western District of New York for violations of 18 U.S.C. § 371 (1970) and 21 U.S.C. § 174 (1964).[3] The earlier indictment was dismissed after a jury had been empanelled but before any evidence was introduced. McCall argues that his conviction in the Southern District was for the same crime as charged in the previously dismissed indictment and therefore was barred by the double jeopardy clause.

2. On May 18, 1973, Chief Judge Friendly denied McCall's motion dated May 2, 1973 for the appointment of counsel on appeal under the Criminal Justice Act. Subsequently, on June 20, 1973, the district court reconsidered McCall's earlier motion in the district court and again denied counsel. We reject McCall's contention that these denials violated his constitutional rights. The affidavits, including that of McCall himself, showed that he was not eligible for appointmnt of counsel under the Act.

3. Similar to 26 U.S.C. §§ 4705(a) and 7237(b) (1964), 21 U.S.C. § 174 (1964) has been repealed. See note 1 supra.

We disagree. The two indictments charged violations of different statutes and were based on different narcotics transactions.

The three count indictment in the Western District charged McCall and Ronald Williams with conspiracy to violate 21 U.S.C. § 174 by "receiving, concealing, buying, selling and facilitating the transportation, concealment and sale of narcotic drugs" after importation into the United States with knowledge that the narcotics had been imported. That indictment also charged McCall and Williams in separate counts with concealing, selling and facilitating the transportation, concealment and sale of 138.6 grams of heroin in violation of 21 U.S.C. § 174. The evidence which the government intended to adduce at the Western District trial was held by District Judge John T. Curtin to have been derived from an illegal wiretap. Accordingly, Judge Curtin dismissed the indictment on October 20, 1971 after having empanelled a jury.

■■ We hold that the double jeopardy clause does not bar McCall's conviction now before us on appeal. The Southern District indictment charged a conspiracy to violate 26 U.S.C. §§ 4705(a) and 7237(b). The Western District indictment charged a conspiracy to violate 21 U.S.C. § 174 and a substantive violation of that section.[4] The dismissal of the prior indictment did not preclude McCall's prosecution in the instant case because in order to support a claim of double jeopardy it must be shown that the offenses charged were in law and fact the same offenses. United States v. Pacelli, 470 F.2d 67, 72 (2 Cir. 1972), cert. denied, 410 U.S. 983 (1973); Dryden v. United States, 403 F.2d 1008 (5 Cir. 1968). Conviction of McCall on the Western District indictment, unlike a conviction of the offense charged in the Southern District, would have required a showing that he had "knowledge of importation". United States v. Nathan, 476 F.2d 456, 459 (2 Cir. 1973). Moreover, to convict McCall on the Western District indictment, the government would not have been required to prove an agreement to transfer or sell narcotics without an order form nor an agreement contemplating any sale. In contrast, such evidence was required for a conviction on the Southern District indictment.

Finally, McCall's claim of double jeopardy is without merit on the further ground that the conspiracy charged in the Western District is entirely different from the conspiracy charged in the Southern District. Different evidence would be required to support convictions on the two indictments. See United States v. Cioffi, 487 F.2d 492, 496–98 (2 Cir. 1973); United States v. Pacelli, *supra*, 470 F.2d at 72; United States v. Barzie, 433 F.2d 984, 985 (2 Cir. 1970); Dryden v. United States, *supra*, 403 F.2d at 1009. The overt acts charged in the two indictments are different. The alleged co-conspirators are different. And

---

4. The relevant portions of the statutes upon which the two indictments were based are as follows:

21 U.S.C. § 174:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States . . . contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000."

26 U.S.C. § 4705(a):

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

26 U.S.C. § 7237(b):

"Whoever commits an offense, or conspires to commit an offense, described in section 4705(a) . . . shall be imprisoned not less than 5 or more than 20 years and, in addition, may be fined not more than $20,000."

the Western District indictment charged a narcotics operation between Buffalo and New York City, whereas the instant conviction from which McCall appeals involved a narcotics operation between New York City and New Orleans.

### III.

■■ McCall also challenges on various grounds the post verdict taint hearing held on April 2, 1973. Initially McCall claims that his conviction should be reversed because he was entitled to a hearing before trial rather than after the verdict to determine if the prosecution was based on evidence from an illegal wiretap.[5] This contention is without merit. As we recently held in United States v. Tortorello, 480 F.2d 764, 785 n. 18 (2 Cir. 1973), cert. denied, 414 U.S. 866 (1973), although we disapprove of the practice it is within the district court's discretion to hold a post verdict taint hearing. We hold on the facts of the instant case that the court did not abuse its discretion in postponing the taint hearing until after trial.[6]

■ McCall next contends that the district court erred in concluding that the Southern District indictment and conviction were not procured by the use of evidence which was the fruit of the illegal wiretaps. After a full evidentiary hearing, the court concluded that "there is a clear-cut demarcation between the scheme and conduct which was obviously the subject of the Buffalo indictment and the scheme and conduct which was the subject of the Southern District of New York indictment, at least sufficient by a great deal, in my judgment, to avoid any illegal taint of a significant nature. . . ." Transcript of April 2, 1973 Hearing, at 104. In so holding, the court found that McCall was neither indicted nor convicted on the basis of evidence which was the fruit of illegal taps. The court also found that the illegal taps were not the source of all information concerning McCall. These findings are not erroneous.[7]

We have carefully considered all of appellant's claims of error and find them to be without merit.

Affirmed.

---

5. At the beginning of the trial, McCall moved for a taint hearing. He alleged that certain state wiretaps which had illegally intercepted his conversations provided the basis for his federal prosecution. Although the government conceded that the state wiretaps were illegal, it informed the district court that evidence obtained from such wiretaps had not been used directly or indirectly in the McCall investigation and would not be used at trial. Judge Tyler then decided to hold a taint hearing, if necessary, after the verdict.

6. Judge Tyler stated that he delayed holding the taint hearing until after trial because "the Government unequivocally . . . represented on the record that they did not use, directly or indirectly, the fruits of the illegal Buffalo taps in the presentation and preparation of this case, both before the grand jury and before trial to a petit jury." Transcript of April 2, 1973 Hearing, at 106.

Therefore, after "check[ing] the record" and considering McCall's accusation and "in the interests of accepting the word of an officer of this Court and in the interests of saving time and a great deal of . . . public money", the court declined to hold a hearing prior to the case going to the jury.

7. McCall's main factual contention was that the government learned from the illegal taps of the activities of Brown and Diggs and therefore suspected McCall of criminal conduct. As Judge Tyler observed, this argument fails to take account of the New Orleans investigation and ignores the roles played by informant Williams, BNDD Agent Allen Johnson, Jr. and Chief Investigator Bruce Jensen. On the basis of the investigations conducted by these three it was determined, solely upon the information they discovered, that a case could be made out against McCall.