UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph CALA, Defendant-Appellant.

No. 1078, Docket 75–1043.

United States Court of Appeals,
Second Circuit.

Argued May 27, 1975.

Decided July 23, 1975.

David Gerald Jay, Buffalo, N. Y., for defendant-appellant.

Roger P. Williams, Asst. U. S. Atty. (Richard J. Arcara, U. S. Atty., for the Western District of New York, Buffalo, N. Y., of counsel), for plaintiff-appellee.

Before CLARK, Associate Justice,* and HAYS and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Joseph Cala was convicted after a jury trial of conspiracy, 18 U.S.C. § 371, to transfer counterfeit currency in violation of 18 U.S.C. § 473. His principal contention on this appeal is that by reason of his prior acquittal in an earlier trial on charges of possessing the same counterfeit currency with intent to defraud, 18 U.S.C. § 472, the government was collaterally estopped in the present prosecution from proving his intent to defraud. After review of the records in both prosecutions, we conclude that there was no such estoppel with respect to the intent element and affirm.

On August 9, 1972, Cala was arrested at his residence and place of business in Studio City, California, and charged with possession of approximately $160,000 in counterfeit ten dollar bills, which Secret Service agents seized at the time of the arrest. Following indictment for violation of 18 U.S.C. § 472,[1] which prohibits, among other things, possession of counterfeit currency "with intent to defraud," he was tried in the Central District of California at Los Angeles on January 2 and 3, 1973. At this trial Cala took the stand and admitted possession of the counterfeit notes but claimed his possession was innocent. Cala's story was that he had received the currency via Greyhound bus from an unknown source, had become scared, and had attempted only to destroy or otherwise to rid himself of the currency. The jury acquitted.

On September 5, 1973, Cala was again indicted, this time in the Western District of New York. This two-count indictment charged him with transferring and delivering approximately $200,000 in counterfeit ten dollar bills with intent that they be used as genuine Federal Reserve Notes, in violation of 18 U.S.C. § 473,[2] and with conspiring to do so, in violation of 18 U.S.C. § 371, with one James Gambacorta, who was not named as a co-defendant. The counterfeit currency was the same currency for possession of which Cala had been acquitted in California. The government's bill of particulars limited the time of the alleged conspiracy to the period July 2 to August 3, 1972.

At the second trial, held in the Western District of New York before Lloyd F. MacMahon, *Judge,* sitting by designation, the government relied almost entirely upon the testimony of Gambacorta, who stated that he and Cala met at a

* Supreme Court of the United States, retired, sitting by designation.

1. Section 472 provides:
   "Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

2. Section 473 provides:
   "Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

restaurant in Tonawanda, New York, on several occasions beginning in May, 1972, that they discussed the possibility of Cala's obtaining paper suitable for printing counterfeit, and that on July 11, 1972, Cala asked Gambacorta to let him take all the counterfeit currency Gambacorta then possessed to California and attempt to dispose of it. Gambacorta further testified that he delivered a brown suitcase to Cala in the middle of July, and that after Cala left for California, the two discussed the currency by telephone on several occasions. Cala did not take the stand at the New York trial. The jury acquitted him of the substantive count, but convicted him on the conspiracy count.

During the New York trial, Cala's counsel moved to dismiss the indictment on the ground of former jeopardy and on the ground that the government was collaterally estopped from proving the critical element of intent to defraud, that issue having been resolved in Cala's favor by the California jury. Judge MacMahon reserved decision on these motions. Defense counsel was allowed to introduce into evidence the fact of the California acquittal, and urged it to the jury as evidence of Cala's innocence. Following the jury's verdict, Judge MacMahon, in a written opinion, rejected the double jeopardy and collateral estoppel claims.

## DISCUSSION

■ We have no difficulty concluding that the prosecution here was not barred on the ground of former jeopardy. To support a former jeopardy claim, it must be shown that the offenses charged were in law and fact the same, *United States v. McCall,* 489 F.2d 359, 362 (2d Cir. 1973), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974); *United States v. Pacelli,* 470 F.2d 67, 72 (2d Cir. 1972), *cert. denied,* 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973). Unless " 'the evidence required to support a conviction upon one [indictment] would have been sufficient to warrant a conviction upon the other,' the double

jeopardy defense must fail," *United States v. Cioffi,* 487 F.2d 492, 496 (2d Cir. 1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1974), *quoting, Morey v. Commonwealth,* 108 Mass. 433, 434 (1871). Prosecution for multiple statutory violations arising out of a single transaction is permissible, and each violation may be tried separately, *United States v. Nathan,* 476 F.2d 456, 459 (2d Cir.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973).

■ Here the California indictment charged Cala with possession of counterfeit currency on August 9, 1972, in violation of 18 U.S.C. § 472, whereas the subsequent New York indictment charged him with violation of a different statute (i. e., 18 U.S.C. § 371) and the alleged violation did not arise out of the transaction forming the basis of the California case but out of earlier events (an agreement made in New York during the period from July 4, 1972 to August 2, 1972). Moreover, although the later-discovered evidence upon which the New York case was based would probably have been admissible in the California trial, the evidence required to support the California charge would not have sustained the New York conviction, since the gist of the New York conspiracy count was an agreement, an element wholly unnecessary to the California case. See *United States v. Cioffi, supra,* 487 F.2d at 498; *United States v. Kramer,* 289 F.2d 909, 913 (2d Cir. 1961). Indeed, the government did not offer evidence of the earlier agreement, which it did not discover until after the California trial.

■ Defendant's collateral estoppel claim poses a more difficult question. In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment embodies the doctrine of collateral estoppel and applies it to criminal prosecutions, precluding prosecution of an offense when an issue of ultimate fact or an element essential to conviction has necessarily been determined in favor of the defendant by a valid and final judgment in a

prior proceeding between the same parties. *United States v. Tramunti,* 500 F.2d 1334, 1346 (2d Cir.), *cert. denied* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974); see *United States v. Gugliaro,* 501 F.2d 68, 70 (2d Cir. 1974); *United States v. Kramer, supra,* 289 F.2d at 913. The burden, however, is on the defendant in the second case to establish that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict. *United States v. Tramunti, supra,* 500 F.2d at 1346; *United States v. Friedland,* 391 F.2d 378, 382 (2d Cir. 1968), *cert. denied,* 404 U.S. 867, 92 S.Ct. 143, 30 L.Ed.2d 111 (1971). In determining what issues were necessarily resolved by the prior proceedings, the court is to take a practical approach, examining the record, pleadings, evidence and jury instructions in order to decide " 'whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. at 1194; *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948); *United States v. Tramunti, supra,* 500 F.2d at 1346. If the jury could have done so in the prior case, the claim of collateral estoppel must fail, since the defendant can prevail only if the issue which he seeks to preclude from consideration was "necessarily" resolved in his favor in the prior proceeding.

█ Cala contends that the California acquittal necessarily resolved in his favor the issue of whether he had the criminal intent required to convict on the New York charge. The record of the California trial, which we have read, reveals that the jury there was asked by both sides to decide the case on the basis of whether the government had sustained its burden of proving that Cala had the "intent to defraud" required by 18 U.S.C. § 472, since he conceded that the government had established the other essential elements, possession and receipt of the counterfeit currency. The government in the present case, furthermore, concedes that the "intent to de-

fraud" required by § 472 is the same kind of intent as that required by § 473, violation of which was the object of the alleged New York conspiracy, i. e., an intent that the counterfeit currency "be passed, published, or used as true and genuine. . . ." Since the California jury, by acquitting Cala of the § 472 charge, concluded that he did not have the requisite criminal intent on August 9, 1972, the question before us is whether this determination precluded the government from proving that he did have the intent during the earlier period of the conspiracy charged in New York, i. e., from July 4, 1972, to August 2, 1972. Following the Supreme Court's suggestion in *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. 1189, that we review the entire record, applying a "practical" rather than a "hypertechnical" approach, we are satisfied that no such preclusion has been established.

The indictments and records of both trials reveal not only that in each case a separate crime relating to a different time period was alleged but that the evidence introduced by the parties in each case was for the most part confined to its separate time period. In the California trial, although Cala testified that he had no idea who had sent him the package of counterfeit money which he received at the Greyhound bus terminal without any prior request or warning, this constituted but a minor part of the proof. Both sides focused on Cala's conduct after receiving the currency and particularly on his disposition of it. The government sought to establish that his testimony about burning some of the currency and arranging with his friend Altonian to destroy the balance was inherently incredible, evidencing criminal intent. Cala's story, on the other hand, was that he had been nervous and scared, attempted to burn some of the money, and let it be known that he wanted nothing to do with the money. This evidence was corroborated to some extent by the government's own prime witness, Sam Altonian. Indeed, the evidence strongly suggested that if anyone intended to pass the counterfeit money,

it was Altonian rather than Cala. Both the evidence and the parties' contentions were devoted to the question of Cala's intent on August 9, 1972, rather than during the earlier period.

Had the government introduced evidence at the California trial of Cala's earlier complicity, which formed the basis of his later trial in New York, we would have been faced with a much more difficult question. As the record stands, however, the government, lacking this evidence, focused almost entirely on proof of his later conduct just prior to his August 9th arrest. For present purposes the significant fact is that the second trial did not amount to a rehash of the evidence presented at the first trial, but was devoted to proof of a different crime involving different evidence.

Thus the California jury's decision that the government had failed to prove the requisite intent "on or about August 9, 1972" did not necessarily determine that Cala had not had such an intent during the earlier period which was the subject of the New York conspiracy charge. The California jury may well have disbelieved entirely his assertion that he did not know the source of the money, and still have acquitted. Indeed, so inherently doubtful was Cala's claim that he had no idea who had sent him $200,000 in counterfeit currency that defense counsel did not once refer to it in his summation to the jury. The possibility is therefore not foreclosed, indeed it is likely, that the jury simply believed that by the time of his possession of the currency on August 9, 1972, Cala had abandoned whatever intent to defraud he may previously have had and truly wanted to destroy the currency.

In short, we are not here faced with an attempted relitigation of the type condemned in *Ashe v. Swenson, supra,* where the government sought to take advantage of the fact that the simultaneous robbery of several victims gave rise to multiple offenses as a means of circumventing the constitutional prohibition of double jeopardy by retrying the defendant on the same evidence but with

respect to a different victim. See also *Hoag v. New Jersey,* 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958). In the present case not only are the offenses different but they do not arise out of the same transaction, see *Harris v. Washington,* 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971); *Simpson v. Florida,* 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971). Having in mind that it is a rare case where a defendant can sustain his burden of establishing that the prior jury necessarily decided an essential issue in his favor, see *United States v. Gugliaro, supra,* 501 F.2d at 70, we are satisfied that the burden was not met here.

The judgment is affirmed.