UNITED STATES of America, Plaintiff,

v.

William Lloyd David COOPER, Dale David Bruneau, Ernesto Tercero, a/k/a Ernie, Juan Antonio Tercero, a/k/a Tony, Eliseo Martinez Peraza, a/k/a Chino, Pattie Lou Bean, Jeffrey Charles Kohner, Pamela Jean Taurman, a/k/a Janet Lucken, Dorothy Katherine Hood, Jerrold Van Hoeg, a/k/a Jerry Holt, Robert Vincent Moore, and Merton John Carlson, Defendants.

No. 4–76 Cr. 54.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 13, 1978.

Andrew W. Danielson, U. S. Atty., by Richard E. Vosepka, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Larry L. Debus, Debus, Busby & Green, Phoenix, Ariz., for defendant Ernesto Tercero.

Phillip S. Resnick, Minneapolis, Minn., for defendant Juan Antonio Tercero.

## MEMORANDUM ORDER

ALSOP, District Judge.

On May 17, 1976, the United States Grand Jury for the District of Minnesota returned the indictment which is the subject of the motions now before the court. Count I charges that Ernesto Tercero, Juan Antonio Tercero, William Lloyd, David Cooper, Eliseo Martinez Peraza,[1] Jerrold Van Hoeg and Robert Vincent Moore conspired

---

1. Eliseo Martinez Peraza's alias is alleged to be "Chino." Peraza speaks little English. *See* n. 13, *infra.*

with each other,[2] with James Platt, William M. Lechuga and Alex Flores[3] and with others[4] to import marijuana into the United States. The conspiracy charged is alleged to have commenced on an unknown date in 1974 and to have continued thereafter until September, 1975. The conspiratorial acts are alleged to have taken place in "Minnesota, Arizona and elsewhere." Count II charges a conspiracy to distribute marijuana. In form it is otherwise identical to Count I, except that Robert Huerta is formally named[5] as an unindicted co-conspirator in Count II.

On April 20, 1977, the United States Grand Jury for the District of Arizona returned an indictment against Ernesto Tercero, Juan Antonio Tercero, Gary James Breen, Michael Rombalski and Norman Wright Rombalski. Count I of that indictment charged that the named defendants conspired with each other and with "other persons whose names are known and unknown" to import marijuana into the United States. The conspiracy was alleged to have existed from March 1, 1975 to May 13, 1975. The conspiratorial acts were alleged to have taken place in "Arizona and elsewhere." Count II charged a conspiracy to distribute marijuana; it is otherwise identical to Count I. On August 16, 1977, trial of those charges against Ernesto and Juan Tercero was commenced in the United States District Court for the District of Arizona. On August 18, 1977, that court entered a judgment of acquittal.

Ernesto and Juan Tercero now move to dismiss the indictment now before the court as to them. They contend that further prosecution is barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

Ernesto and Juan Tercero argue that the conspiracies charged in Arizona and those charged in Minnesota were in reality a single conspiracy. The government argues that the conspiracies are similar but separate.

The traditional rule is that an accused asserting a claim of double jeopardy bears the burden of proving that the prosecutions are indeed for the same offense in law and in fact. *See Kowalski v. Parratt,* 533 F.2d 1071, 1074 (8th Cir.), *cert. denied,* 429 U.S. 844, 97 S.Ct. 125, 50 L.Ed.2d 115 (1976). Traditionally, whether offenses are the same under this standard is determined by applying the "same evidence" test, i. e., by examining whether "the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other." *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871); *see also Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911); *United States v. Young,* 503 F.2d 1072 (3d Cir. 1974); *United States v. McCall,* 489 F.2d 359, 362–63 (2d Cir. 1973), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974).

The efficacy of the "same evidence" test is open to serious question in conspiracy cases because of the difficulty in its application. It is difficult to apply because a single conspiracy may be established by different aggregations of proof. *E. g., United States v. Mallah,* 503 F.2d 971, 985 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

It is the agreement which is the primary element of a conspiracy. *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Jackson,* 549 F.2d 517, 530 (8th Cir.), *cert.*

---

**2.** David Dale Bruneau, Pattie Lou Bean, Jeffrey Charles Kohner, Pamela Jean Taurman and Dorothy Katherine Hood are also indicted as conspirators.

**3.** Peter Scheurer, Donald Hendrickson, Joseph Duffy, Garrit Eugene Koopman and William Miller are named as other unindicted co-conspirators.

**4.** The Grand Jury also knew that Peter Lechuga, Jimmy Tercero and Gary Breen were participants in the conspiracy.

**5.** Although Count I does not name Robert Huerta as an unindicted co-conspirator, it does allege that he participated in one of the overt acts allegedly carried out in furtherance of the conspiracy.

*denied sub nom. Muhammad v. United States,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Because it is the agreement itself which constitutes the crime, conspiracy is unlike most other crimes. A conspiracy may continue for an extended period of time and may involve the commission of numerous criminal acts. Conspirators need not know each other's identity. New conspirators may join the criminal agreement long after its inception, and conspirators may terminate their relationship to the conspiracy long before its conclusion. The intended unlawful scheme may be international in scope and may have an impact in geographically diverse locations. *See United States v. Varelli,* 407 F.2d 735, 741–42 (7th Cir. 1969), *cert. denied sub nom. Saletko v. United States,* 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972).

■ The government rarely attempts to prove a conspiracy by means of direct evidence, evidence which is seldom available because of the secrecy with which most conspiratorial agreements are shrouded. Instead, the government typically attempts to prove that the persons who are alleged to have participated in the conspiracy engaged in a series of criminal acts. If the government's evidence demonstrates a concert of action on the part of the alleged conspirators, the existence of the conspiracy itself may be inferred. *Koolish v. United States,* 340 F.2d 513, 523–24 (8th Cir.), *cert. denied,* 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965).

■ If a conspiracy is ongoing or widespread and if it results in the commission of numerous criminal acts, the government is able [6] to carve evidence of smaller seemingly separate agreements from the evidence of the single conspiracy. *See, e. g., United*

States v. Cohen, 197 F.2d 26, 29 (3d Cir. 1952). Because an apparent distinction between conspiracies may be attributable to the government's discretion in presenting its evidence to the grand jury and at trial rather than to the fact that the agreements themselves are separate, the "same evidence" test is less than wholly satisfactory. *See United States v. Papa,* 533 F.2d 815 (2d Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976); *United States v. Bommarito,* 524 F.2d 140 (2d Cir. 1975); *United States v. Young, supra; United States v. Mallah, supra; United States v. Palermo,* 410 F.2d 468 (7th Cir. 1969); *but see United States v. Prince,* 515 F.2d 564 (5th Cir.), *cert. denied sub nom. Muckenstrum v. United States,* 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 406 (1975).

Ernesto and Juan Tercero would be hard pressed to sustain their claims of double jeopardy if the court were to adopt the "same evidence" test. Ernesto and Juan Tercero could be convicted of the conspiracies with which they are now charged only if the government were to offer evidence which would tend to prove that one or more of the defendants had performed one or more of the overt acts alleged in the indictment.[7] None of the evidence offered at the Arizona trial of Ernesto and Juan Tercero would tend to prove that any overt act alleged in the Minnesota indictment had been performed. Because the evidence required to support a conviction on the Arizona indictment was different from that which would warrant a conviction on the indictment now before the court, the traditional rule would be of no benefit to Ernesto and Juan Tercero.

■ Nevertheless, Ernesto and Juan Tercero maintain that the conspiracies are

---

**6.** The arbitrary subdivision of a single conspiracy into numerous separate agreements and the corresponding filing of multiple indictments may be motivated by unbridled prosecutorial vindictiveness. *Cf. United States v. Mallah, supra* at 981. However, it may also result from unavailing investigative attempts to gain access to the carefully guarded inner recesses of the conspiratorial enterprise and the consequent misapprehension of the conspiracy's scope.

**7.** The existence of the conspiracy could be inferred from such evidence. In order to obtain convictions against Ernesto and Juan Tercero, the government would also be required to introduce evidence which would tend to prove that they had knowingly associated themselves with the conspiracy. *E. g., United States v. Jackson, supra.*

one and the same and that they are entitled to the protection of the Double Jeopardy Clause of the Fifth Amendment. The constitutional prohibition against putting a person in jeopardy twice for the same offense is a matter of substance, and it may not be nullified by the mere forms of criminal pleading. *Short v. United States,* 91 F.2d 614, 624 (4th Cir. 1937). In order to safeguard the rights to which Ernesto and Juan Tercero are constitutionally entitled, the court is urged not only to abandon the "same evidence" test but also to shift the burden of proof to the government. *Compare United States v. Papa, supra* at 821; *United States v. Mallah, supra* at 986. Because the "same evidence" test is inadequate to allow the court to determine whether or not two conspiracies are the same offense in law and in fact, the court must adopt a different test. The standard which the court deems to be appropriate and which the court will apply is whether or not the totality of the circumstances demonstrate an identity of purpose and a commonality of personnel, of time, of locale and of method of operation sufficient to permit the court to conclude that the agreements are in fact the same.[8] However, because Ernesto and Juan Tercero have established[9] that the Arizona conspiracy and the Minnesota conspiracy are the same offense, the court need not reach the issue of whether or not the burden of proof should be shifted.

■ The record[10] reflects circumstances that demonstrate that there was but one overall conspiracy to import marijuana from Mexico and to distribute it throughout the United States.[11] The dates, the locations, the personnel and the method of operation involved in the conspiracies charged in the Arizona and Minnesota indictments overlap to such an extent that the court can do nothing but conclude that the two operations are no more than different faces of a single conspiracy.

The government argues that the conspiracies are separate and distinct. The indictments themselves establish the requisite identity of purpose, and the government admits that the methods of operation are similar. However, the government contends that the only overlap in personnel is that Ernesto and Juan Tercero were involved in both operations. It also contends that, even though both operations had ties to the Phoenix area, the conspiracy charged in the Arizona indictment had as its purpose the importation of marijuana for distribution in Illinois while the conspiracy charged in the indictment now before the court had as its purpose the importation of marijuana for distribution in Minnesota. It finally contends that the conspiracy charged in the Arizona indictment had its genesis long after the other agreement had been formed and that the parties to the conspiracy charged in Arizona terminated their agreement at a time when the parties to other conspiracies were still engaged in their unlawful enterprise.

If the government's argument were to find support in the record, *United States v. Bommarito, supra,* would be apposite, and Ernesto and Juan Tercero's claims of double

---

**8.** Without an identity of purpose there could be no common agreement. However, the evidence need not demonstrate "mirror image" correspondence in the other circumstances.

**9.** The transcript of testimony before the United States Grand Jury for the District of Arizona was not available to Ernesto and Juan Tercero. Without that transcript, for Ernesto and Juan Tercero to prevail it would be necessary to shift the burden of proof. However, the court did examine that transcript *in camera,* and that transcript demonstrates conclusively that the Arizona conspiracy and the Minnesota conspiracy are one.

**10.** The record includes *inter alia* the Arizona indictment, the transcript of testimony before

the Arizona grand jury, the Arizona trial transcript, the Minnesota indictment, the transcript of testimony before the Minnesota grand jury and the transcript of portions of suppression hearings before this court. *See United States v. Papa, supra* at 819. The court might also have conducted an evidentiary hearing prior to or subsequent to trial. *See United States v. Young, supra.*

**11.** There is evidence to indicate that marijuana imported by persons who were parties to the conspiracy was distributed in Arizona, Minnesota, Illinois, California, Colorado, Michigan, Ohio and Kansas.

jeopardy would fail. In *Bommarito,* the Court of Appeals for the Second Circuit held that the Double Jeopardy Clause did not bar a prosecution on a charge of conspiracy to distribute methamphetamine even though the defendant previously had been convicted of a conspiracy to distribute controlled substances. There the record revealed no evidence of an overlap in operation or personnel; the only common element was the defendant John Bommarito's participation in both conspiracies. However, the record here belies the government's argument; it is unlike the one presented in *Bommarito* in that the record now before the court reflects significant overlaps in personnel, in time and in locale.

Even though Ernesto and Juan Tercero are the only individuals charged as conspirators both in the Arizona indictment and in the Minnesota indictment, the record establishes that the overlap in personnel was much more substantial than the indictments alone would indicate. It is clear that Ernesto Tercero was the central figure in a conspiracy to import and distribute marijuana and that Juan Tercero was his brother's confidante and close associate. All the marijuana imported by the conspirators [12] was obtained from two unidentified [13] individuals who directed separate collection and packaging operations based in the Santa Ana region of northern Mexico. To transport the marijuana which had been obtained in Mexico from Mexico to Phoenix, Ernesto Tercero employed other unidentified [14] individuals to drive automobiles, vans, pickup trucks and a refrigerated truck in which the marijuana had been concealed. Ernesto Tercero also contracted with William Cooper and his associates and with Chris Kilgus [15] to pilot airplanes in which marijuana was smuggled from Mexico to the Phoenix area. Robert Huerta, Robert Moore, Jimmy Tercero, Alex Flores and Peter and William Lechuga were employed to pick up arriving shipments of marijuana, to unload, weigh and store the marijuana and to deliver it to buyers in the Phoenix area. The marijuana imported by the members of the conspiracy was to be parcelled out to Gary Breen, to Jerrold Van Hoeg and James Platt, to William Cooper and to others. Breen, Van Hoeg, Platt, Cooper and the others in turn distributed the marijuana to still others for resale in Arizona, Illinois, Minnesota, Colorado, California, Ohio, Michigan and Kansas.[16]

Both the Minnesota indictment and the Arizona indictment contain blanket charges that the named conspirators combined and conspired with other persons whose names were either known or unknown to the grand jurors. If the members of the two grand juries had heard no evidence which would establish that there were significant overlaps in personnel, the court might be entitled to conclude that the generalized form of the charges suggests such an overlap. *See United States v. Mallah, supra.* However, because both grand juries heard evidence concerning the involvement of not only Ernesto and Juan Tercero but also William Cooper, Gary Breen, James Platt, William and Peter Luchuga, Jimmy Terce-

---

**12.** There was no distinction between the marijuana purchased from the two sources other than that one of the sources provided marijuana which was considered to be of higher quality. Persons who regularly purchased marijuana from the conspirators received marijuana which had been obtained from both sources.

**13.** Both individuals are described as Mexican nationals. One is referred to as "Chino." "Chino" is described as an individual who speaks little or no English. *See* n. 1, *supra,* and accompanying text.

**14.** Two of the drivers are known to be Roger Goodman and Carlos Ramirez.

**15.** The airplane flown by Chris Kilgus was owned by Michael and Norman Rombalski. The Arizona indictment charged Michael and Norman Rombalski and Gary Breen with conspiring with Ernesto and Juan Tercero to import and to distribute marijuana.

**16.** Breen, Van Hoeg, Platt and Cooper knew of one another. In part, the success of each one's criminal activity depended on the success of the others' activity. In addition, there was some direct interaction between the four. On at least one occasion, Breen sold marijuana to Van Hoeg. On another occasion, Platt received marijuana that had been smuggled into the United States in an airplane piloted by Cooper.

ro, Jerrold Van Hoeg, Robert Moore, Robert Huerta and Manuel Martinez, the court can only conclude that the overlap in personnel was substantial, if not total; that the scope of the conspiracy charged by the grand jury in Arizona was within the scope of the conspiracy charged by the grand jury in Minnesota; and that the allegations concerning other conspirators known to the grand jury serves only to mask the overwhelming similarities.

Likewise, the record establishes that the distinctions in time and locale to which the government directs the court's attention are more apparent than real. The seeming distinctions disappear upon close examination.

The parameters of the conspiracy charged in the Arizona indictment are defined by reference to the involvement of Chris Kilgus, while those of the conspiracy charged in the Minnesota indictment are defined by reference to the involvement of William Cooper. The actual parameters of the true agreement are much broader than those defined in either indictment and include the activities of Kilgus, of Cooper and of many others.

The Arizona indictment itself artificially circumscribes the bounds of the agreement to which the persons charged were party. The time frame of the criminal enterprise which involved Ernesto and Juan Tercero and Gary Breen is not nearly so narrow as the Arizona indictment would lead its reader to believe. Testimony before the grand jury in Arizona demonstrates that Ernesto and Juan Tercero and Gary Breen were engaged in a continuing conspiracy to import and to distribute marijuana. That testimony also demonstrates that that conspiracy commenced no later than December, 1974, and terminated no sooner than September, 1975. The dates contained in the indictment refer only to the shorter time

during which Chris Kilgus participated in the conspiracy. It was on or about March 1, 1975, that Kilgus joined the conspiracy by agreeing to pilot an airplane in which marijuana was to be imported; it was after May 13, 1975, that Kilgus ceased to be involved in the conspiratorial activity. Testimony before the grand jury demonstrates that marijuana was being shipped to Illinois, even though the indictment confines itself to allegations of activity which took place in Arizona and Mexico.

The Minnesota indictment also artificially circumscribes the bounds of the conspiracy which it purports to charge. Although there was no evidence before the grand jury in Minnesota which would compel a conclusion that the conspiracy charged existed prior to 1974,[17] the evidence was more than ample to establish the existence of a conspiracy to import and to distribute marijuana prior to William Cooper's entering into such an agreement with Ernesto Tercero.[18] In addition, although the indictment alleges only that conspirators performed overt acts in Mexico and in Arizona and Minnesota, the evidence before the grand jury demonstrates that the conspirators engaged in activity designed to further their unlawful scheme in numerous other places.

Thus, it is clear that the unlawful purpose of the various conspiracies charged was the same and that the principal actors were unchanged. It is equally clear that there were other persons who played minor roles and who did not know the scope of the overall conspiracy; many of those persons did not remain members of the conspiracy for its entire duration. However, the addition of new members to a conspiracy or the withdrawal of old ones does not fragment the conspiracy into numerous separate and unrelated conspiracies. *E. g., United States v. Bryant,* 364 F.2d 598, 603 (4th Cir. 1966). It is also clear that the times during which

---

17. The indictment alleges that the conspiracy commenced on an unknown date in 1974.

18. The Minnesota indictment seems to treat William Cooper as the central figure in the conspiracy charged. It also seems to assume that the conspiratorial activity commenced

when Cooper became a party to the agreement. The record demonstrates that neither was the case; Cooper and his associates merely joined a pre-existing conspiracy and were less than central participants, even though their participation was substantial.

**1266**

the conspiracies continued and the locales in which they operated were substantially the same. *Compare United States v. Mallah, supra.*

Therefore, the court is satisfied that Ernesto and Juan Tercero have met the test which the court determined to be appropriate. The totality of circumstances demonstrate an identity of purpose and a commonality of personnel, of time, of locale and of method of operation. Based upon that showing, the court concludes that the agreements are the same and that Ernesto and Juan Tercero may not be tried again for the same offense.

This does not mean that a person once tried for conspiracy may never be tried for another similar offense. In many cases, there may be nothing to indicate any connection between the parties or between the agreements. *United States v. Mallah, supra.*

■ The finding that the conspiracies charged in Arizona and those charged in Minnesota are one, does not go to the guilt or innocence of Ernesto and Juan Tercero. *See United States v. Young, supra* at 1077. It does, however, serve to guarantee to Ernesto and Juan Tercero their constitutionally protected right to be free from the government's repeated attempts to convict them of the same crime. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and to fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors may not attempt to secure that punishment in more than one trial.[19] *Brown v. Ohio, supra* at 165, 97 S.Ct. 2221.

19. The government remains free to indict and try Ernesto and Juan Tercero for their roles in committing the substantive crimes of importa-

Upon the foregoing,

IT IS ORDERED That the motions of Ernesto Tercero and Juan Antonio Tercero to dismiss the indictment be and hereby are granted, and the indictment is dismissed as to Ernesto Tercero and Juan Antonio Tercero.

tion and distribution of marijuana. *See United States v. Mallah, supra* at 987.