**UNITED STATES of America, Appellant,**

v.

**Ernesto TERCERO, Appellee.**

**UNITED STATES of America, Appellant,**

v.

**Juan Antonio TERCERO, Appellee.**

**Nos. 78–1106, 78–1107.**

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1978.

Decided July 14, 1978.

Richard Vosepka, Asst. U. S. Atty., Minneapolis, Minn. (argued), and Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief, for appellant.

Robert J. Lyman, Phoenix, Ariz., argued for Ernesto Tercero and on brief, for appellees.

Phillip S. Resnick, Minneapolis, Minn., argued, for Juan Antonio Tercero and on brief, for appellees.

Larry L. Debus, Phoenix, Ariz., on brief, for appellees.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This case presents the difficult question of whether two marihuana conspiracies charged in the District of Arizona and the District of Minnesota are in reality one single conspiracy for purposes of the Fifth Amendment guarantee against double jeopardy.

On May 17, 1976, the United States grand jury for the District of Minnesota returned a multi-count indictment charging Ernesto Tercero, his brother Juan Antonio Tercero, and others with conspiracy to import into the United States[1] and distribute[2] marihuana.[3] The conspiracy was alleged to have commenced on an unknown date during 1974 and continued thereafter until about September 1975, in the "Districts of Minnesota, Arizona, and elsewhere."

On April 20, 1977, following the Minnesota indictment, the United States grand jury for the District of Arizona returned a multi-count indictment charging Ernesto Tercero, Juan Antonio Tercero, and others with conspiracy to import into the United States[4] and distribute[5] marihuana.[6] The conspiracy was alleged to have commenced on or about March 1, 1975, and continued thereafter until on or about May 13, 1975, in the "District of Arizona and elsewhere."

Trial of the Terceros on the Arizona indictment commenced on August 16, 1977. Two days later the trial ended when the district court directed a verdict of acquittal as to all counts.[7]

On December 5, 1977, the Terceros filed a motion in the United States District Court in Minnesota to dismiss the Minnesota indictment. Terceros' motion alleged that the Arizona and Minnesota conspiracies were in reality one conspiracy and that the prosecution of the Minnesota indictment would violate the Fifth Amendment guarantee against double jeopardy. Following a

1. The conspiracy to import marihuana was alleged to be in violation of 21 U.S.C. §§ 952(a) and 963.

2. The conspiracy to distribute marihuana was charged as a violation of 21 U.S.C. §§ 841(a)(1) and 846.

3. The indictment also contained substantive counts of importation and distribution. The substantive count against the Terceros was subsequently dismissed by the district court on venue grounds.

4. This charge was alleged to be in violation of 21 U.S.C. §§ 952(a), and 960(a)(1), and 963.

5. This charge was alleged to be in violation of 21 U.S.C. §§ 841(a)(1), and (b), and 846.

6. In addition to the conspiracy counts, the Arizona indictment contained substantive counts of importation and distribution.

7. At trial the government's proof regarding the single incident alleged in the Arizona indictment failed to show that the crime had been committed on the dates alleged. The trial court held this to be a fatal variance because the Terceros had interposed an alibi defense to the dates charged.

review of the record,[8] the district court[9] concluded:

> The dates, the locations, the personnel and the method of operation involved in the conspiracies charged in the Arizona and Minnesota indictments overlap to such an extent that the court can do nothing but conclude that the two operations are no more than different faces of a single conspiracy.

Accordingly, the district court dismissed the Minnesota indictment as to Ernesto Tercero and Juan Antonio Tercero.[10] This appeal by the government followed.

The double jeopardy clause of the Fifth Amendment is a guarantee "that the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity * * *." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).[11] "This guarantee is expressed as a prohibition against multiple prosecutions for the 'same offence.'" *Ashe v. Swenson,* 397 U.S. 436, 450, 90 S.Ct. 1189, 1198, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring).

Traditionally, the test of a double jeopardy claim arising from more than one prosecution has focused on whether the prosecutions are for the same offense in law and in fact. *United States v. Papa,* 533 F.2d 815, 820 (2d Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976); *United States v. Bommarito,* 524 F.2d 140, 145–46 (2d Cir. 1975). *See Kowalski v. Parratt,* 533 F.2d 1071 (8th Cir.), *cert. denied,* 429 U.S.

844, 97 S.Ct. 125, 50 L.Ed.2d 115 (1976). Offenses are deemed to be the same under this test if the evidence required to support conviction in one of the prosecutions is sufficient to support conviction in the other prosecution. *United States v. Papa, supra,* 533 F.2d at 820; *United States v. McCall,* 489 F.2d 359, 362–63 (2d Cir. 1973), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974). In the instant case it is clear from the overt acts alleged in the indictments that the evidence required to support a conviction in Arizona is different from that which would support a conviction in Minnesota. Therefore, the Terceros cannot meet the requirements of the "same evidence" test.

■ This conclusion, however, does not end our inquiry. In recent years the efficacy of the "same evidence" test has been questioned in regard to criminal conspiracy cases. *United States v. Papa, supra,* 533 F.2d at 820–22; *United States v. Bommarito, supra,* 524 F.2d at 146; *United States v. Young, supra,* 503 F.2d at 1075–76; *United States v. Mallah,* 503 F.2d 971, 985–87 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). In a criminal conspiracy case the government often has many overt acts and coconspirators which it can charge in an indictment. This is particularly true in narcotics conspiracy cases where large quantities of raw drugs are moved from importer through myriad channels to the addict consumer. *See United States v. Moten,* 564 F.2d 620, 624–26 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 489, 54 L.Ed.2d 318 (1977); *United States v. Taylor,* 562 F.2d 1345, 1351–52 (2d Cir.),

---

8. The district court did not conduct an evidentiary hearing, a permissible procedure, before ruling on the Terceros' motion. *See United States v. Young,* 503 F.2d 1072, 1077 (3d Cir. 1974). The district court instead relied, *inter alia,* on the Arizona indictment, the transcript of testimony before the Arizona grand jury, the Arizona trial transcript, the Minnesota indictment, the transcript of testimony before the Minnesota grand jury, and the transcript of portions of suppression hearings before the district court.

9. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

10. *See United States v. Cooper,* 442 F.Supp. 1259 (D.Minn.1978).

11. The Supreme Court has recently recognized that this language from *Green* "is not a principle which can be expanded to include situations in which the defendant is responsible for the second prosecution." *United States v. Scott,* —— U.S. ——, ——, 98 S.Ct. 2187, 2196, 57 L.Ed.2d 65 (1978).

*cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977); *United States v. Armedo-Sarmiento,* 545 F.2d 785, 789–90 (2d Cir. 1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). By choosing one set of overt acts in one indictment and a different set of overt acts in another indictment, the government is able to carve one large conspiracy into several smaller agreements. The "same evidence" test, which focuses on the evidence required to support a conviction for each indictment, provides no protection to the defendant from this type of prosecutorial action. *United States v. Young, supra,* 503 F.2d at 1075–76; *United States v. Mallah, supra,* 503 F.2d at 985; *Short v. United States,* 91 F.2d 614, 624 (4th Cir. 1937). Under these circumstances, we are persuaded that the district court correctly refused to apply the "same evidence" test. In our view the proper test, which the district court adopted, is whether the totality of the circumstances demonstrate that the two alleged conspiracies are in reality part of a single conspiracy.[12]

Before turning to the record before us, one final comment should be made. In its supplemental brief filed after oral argument, the government has requested this court to apply a de novo standard of review to the district court's determination of the double jeopardy issue because the same was based on a consideration of pleadings, records and transcripts not objected to by either party and fully available in the appellate record. The appellees contend that a determination of a single versus multiple conspiracies is generally one of fact and asks this court to apply the clearly erroneous standard. They argue that the standard does not change when the findings are based on transcripts instead of live testimony. We need not decide which test is prop-

er in the instant case. We have carefully reviewed the entire record[13] and are persuaded that under either standard,[14] the district court must be affirmed.

■ Our examination of the Minnesota grand jury testimony and the Arizona grand jury testimony reveals that in each instance the respective indictments artificially circumscribe the conspiracy. For example, the Minnesota indictment appears to focus on William Cooper as the central figure in the conspiracy. The grand jury, however, heard testimony that Ernesto Tercero was the principal figure in the operation and Juan Tercero was his brother's confidante. Furthermore, the testimony revealed that the scope of the conspiracy was much broader than Cooper's involvement. The Tercero organization, which had been under investigation as early as October 1974, originally used various motor vehicles to bring marihuana from Mexico into the Phoenix area. Robert Huerta, Robert Moore, Jimmy Tercero, Alex Flores, Peter Lechuga, William Lechuga and Manuel Martinez were all employed in various positions by the Tercero organization to facilitate the transportation, storage and distribution of marihuana.

It was not until early 1975, when the Terceros began to use airplanes in addition to motor vehicles to smuggle marihuana into the United States, that William Cooper associated himself with the Tercero organization. Cooper and his associates piloted airplanes carrying marihuana from Mexico to the Phoenix area on numerous occasions. Several flights into Mexico were described in detail before the grand jury by Cooper's associates. The grand jury additionally heard testimony to the effect that the marihuana imported into the Phoenix area by the Terceros was distributed to James

---

12. Although the district court did not reach the issue of whether the burden of proof shifts from the defendant to the government, in our opinion "once a defendant introduces sufficient evidence that the two conspiracies alleged were in fact one, the burden shifts to the government to rebut the inference of unity." *United States v. Papa, supra,* 533 F.2d at 821. *See United States v. Mallah, supra,* 503 F.2d at 986.

13. *See* note 8, *supra.*

14. For a further discussion of the application of the clearly erroneous standard of review to the factual findings of a district court, *see Gay Lib v. University of Missouri,* 558 F.2d 848 (8th Cir. 1977).

Platt, Jerrold Van Hoeg, Gary Breen, William Cooper and others. These middlemen, in turn, distributed the marihuana to other buyers. It is therefore apparent that Cooper's involvement, although more than minimal, did not in fact mark the parameters of the conspiracy.

Turning to the Arizona indictment, it is clear from its comparison to the Arizona grand jury testimony, that it also artificially circumscribes the conspiracy. The Arizona indictment appears to focus on the participation of Chris Kilgus, another pilot used by the Tercero organization to smuggle marihuana into the Phoenix area from Mexico. Kilgus was involved in the conspiracy from approximately March 1, 1975, until May 13, 1975, the dates of the conspiracy alleged in the Arizona indictment. The testimony before the Arizona grand jury reveals, however, that the actual life of the conspiracy was much longer. For example, James Platt, who also testified before the Minnesota grand jury, testified that in May or June of 1974 he began buying marihuana from Ernesto Tercero. By August 1974, Platt was receiving 100-pound shipments of marihuana from Ernesto Tercero approximately three or four times a month. After receiving the marihuana from Tercero, Platt would in turn sell to other middlemen. Eventually over ninety percent of the marihuana Platt sold left Arizona and was redistributed in areas such as Colorado, Chicago, Cleveland and Kansas City. From December 1974 until March 1975, Platt and his associate, Jerrold Van Hoeg, bought approximately one-half of the Terceros' shipments of marihuana, ranging in quantities from 500 pounds to 1200 pounds. The other half of the shipments during this time was being purchased by Gary Breen. The Arizona grand jury heard further evidence con-

cerning the participation of Robert Huerta, Robert Moore, Jimmy Tercero, Alex Flores, Peter Lechuga, William Lechuga and Manuel Martinez—all whose names had been mentioned in testimony before the Minnesota grand jury.

In addition to a description of that part of the Tercero smuggling operation involving motor vehicles, the Arizona grand jury heard testimony describing the use of airplanes to import marihuana from Mexico. In this regard, William Cooper's role as a pilot and middleman in the Tercero organization was described. Further testimony revealed Kilgus' participation as a pilot. In summary, the Arizona grand jury heard much more testimony concerning the Tercero organization than the indictment would indicate.

Our careful review of the record convinces us that the conspiracies to import and distribute marihuana charged in the Minnesota indictment and the conspiracies to import and distribute marihuana charged in the Arizona indictment are in reality one single conspiracy. The overlap in testimony as to the personnel in each alleged conspiracy is significant. Furthermore, the relationships of these personnel were neither casual nor spasmodic. The methods of operation in each alleged conspiracy were quite similar. Immense quantities of marihuana were imported and distributed. Finally, the testimony before each grand jury revealed that the time frame of the alleged conspiracies was similar. We conclude that one overall conspiracy existed.[15]

The government argues that *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), requires that two different conspiracies be charged in the in-

---

**15.** Although the argument can be made that two independent and competing conspiracies existed as to middlemen Platt and Breen, we reject that argument. Assuming arguendo that the evidence did show parallel sales operations, such operations can be part of the same conspiracy if there is evidence of mutual dependence and support. *United States v. Panebianco*, 543 F.2d 447, 453 (2d Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977). *See United States v. Tramunti*, 513 F.2d 1087, 1108 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). Breen, Platt, Platt's associate, Hoeg, and Cooper knew of one another's activity. Breen and Hoeg were friends throughout the relevant time period. On one occasion, Platt and Hoeg attempted to hire Kilgus, the pilot who often flew for Breen. The record shows mutual dependence and support.

stant case.[16] In *Kotteakos*, convictions were obtained on the theory that all of the defendants were members of a single conspiracy although, in fact, the proof disclosed multiple conspiracies. The Supreme Court held that the error of variance had been committed.[17] In the instant case we do not have a pattern of "separate spokes meeting at a common center * * * without the rim of the wheel to enclose the spokes." *Kotteakos v. United States, supra,* 328 U.S. at 755, 66 S.Ct. at 1243. Here the totality of the circumstances indicates a single overall conspiracy. *See Blumenthal v. United States,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947); *United States v. Adamo,* 534 F.2d 31, 37 (3d Cir.), *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976).

In conclusion, after examining the record, we are persuaded that the district court properly held that the marihuana conspiracies charged in Arizona and in Minnesota are in fact one conspiracy. We fully realize that our decision arguably places the government in a problematic position. *See United States v. Sperling,* 506 F.2d 1323, 1340–41 (2d Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). We do not mean to suggest by our decision that in order to avoid double jeopardy claims, the government should consolidate conspiracy cases in one count which it could charge separately. Such a procedure could raise *Kotteakos* problems. However, in our opinion, if the government chooses to prosecute conspiracies separately, then prosecutors should be prepared to demonstrate that the criminal agreements are indeed separate and distinct. Under the circumstances of this case, a prosecution of the Minnesota indictment would violate appellees' Fifth Amendment guarantee against double jeop-

ardy. Accordingly, the district court properly dismissed the Minnesota indictment.

Affirmed.

---

**16.** The government also argues that *United States v. Bertolotti,* 529 F.2d 149 (2d Cir. 1975), requires that two different conspiracies be charged in the instant case. In *Bertolotti,* however, "the alleged single conspiracy was not directed primarily to the sale and disposition of drugs but rather to thefts of cash from drug dealers." *United States v. Moten, supra,* 564 F.2d at 626. The instant case is clearly distinguishable.

**17.** "The true inquiry," as stated in *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935), "is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." *See United States. v. Bastone,* 526 F.2d 971, 979–81 (7th Cir. 1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976).