UNITED STATES of America, Appellee,

v.

William Len TANNER, Appellant.

No. 88-2197.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 22, 1988.

Decided Nov. 3, 1988.

Rehearing and Rehearing En Banc
Denied Dec. 12, 1988.

Jeffrey T. Weisman, St. Louis, Mo., for appellant.

Debra E. Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON,
WOLLMAN and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

William Len Tanner appeals the ruling of the district court,[1] accepting a report and recommendation of the magistrate which denied his motion to dismiss on a claim of double jeopardy. Tanner was indicted in Missouri for conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. § 841(a)(1). He claims that as he was previously indicted under the same statutes in the Central District of California and pled guilty to a conspiracy charge there, the Missouri indictment places him in jeopardy once again for the same offense. We have given immediate consideration to this interlocutory appeal. We affirm the order of the district court.[2]

Tanner, along with nine others, was indicted in the Eastern District of Missouri on November 25, 1987 for conspiracy to ship heroin and cocaine from the Los Angeles area to the St. Louis area. Count I of the indictment describes the alleged con-

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

2. On October 13, 1988, after hearing oral argument and considering the briefs of the parties, we issued an order affirming the district court's denial of appellant's motion. This opinion sets forth the reasons for our decision.

spiracy. It states that between April 1985 and January 1986 at least thirty-seven packages containing narcotics were delivered by the United States Postal Service's "Express Mail," and that in return Western Union money orders were sent from St. Louis to Tanner in Los Angeles and to defendant Locha Davis in Los Angeles, Little Rock, and Portland, Oregon. The senders of these money orders are identified as defendants Davis, Henry Dumas, Alfreda Nevils, Clinton Nevils, Kerry Nevils, and Jackie Turner. According to the indictment, some forty money orders worth over $179,000 were sent by Western Union. It is alleged that the heroin and cocaine received by Express Mail would be prepared for distribution and the profits from the scheme would be concealed through false records by Terry Dumas, Alfreda Dumas, Henry Dumas and Locha Davis. Henry Dumas is also alleged to have contracted for services and equipment, making false statements regarding their true use.

The Missouri indictment charges as overt acts the sending of ten money orders to Tanner in California from various defendants and the shipment of five packages by Express Mail from California to different individuals in Missouri. The indictment further names certain persons as being present in a St. Louis apartment and alleges that one defendant rented a hotel room in St. Louis and that another defendant possessed its key. Finally, the indictment alleges that one defendant obtained a package from a residence in St. Louis, and that a telephone conversation took place between two others. All these acts are said to have occurred between March 15, 1985 and January 30, 1986.

Apart from the alleged conspiracy, the Missouri indictment charges Tanner in seven additional counts with causing money orders to be issued and sent from St. Louis to Los Angeles for the purpose of facilitating the unlawful distribution of controlled substances in violation of 18 U.S.C. § 1952.

In February 1986, Tanner had been charged in the Central District of California with conspiracy to knowingly possess and distribute heroin in violation of 21 U.S.

C. § 841(a)(1). The California indictment alleged that Tanner negotiated with prospective buyers for the sale of heroin and arranging time and place of delivery. Other members of the conspiracy were identified as Ramee Jamal Shah and Arnold Chavez–Mancilla, who along with Tanner were named as defendants by the California indictment. The indictment charged that Shah would accompany Tanner to the site of delivery and would then obtain heroin from Chavez–Mancilla. The heroin would be delivered to Tanner, who would in turn give it to prospective buyers in exchange for cash.

The overt acts charged by the California indictment all transpired during two days in early 1986 and all occurred in the Central District of California. On February 11, 1986, Tanner met with undercover agents of the Drug Enforcement Administration (DEA) to negotiate the sale of heroin. The next day, Shah drove Tanner to the parking lot of the ABC Market in Los Angeles to deliver heroin to the undercover agents. When Chavez–Mancilla arrived at the lot, Shah walked across the lot to obtain a package from him. Shah then returned to the vehicle in which Tanner waited. Minutes later, Tanner delivered to DEA agents a clear bag containing heroin.

While other counts were filed in California, they are immaterial to our considerations here as they were dismissed when Tanner pleaded guilty to the conspiracy charge detailed above. Tanner was sentenced to three years' imprisonment.

Tanner's motion to dismiss the Missouri indictment on grounds of double jeopardy was submitted to Magistrate Carol Jackson, who analyzed the indictments in California and Missouri, along with their supporting affidavits, to determine whether they charged two separate conspiracies or one overall agreement involving all participants in both states. Under *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir.1985), the magistrate considered the time during which the conspiracies allegedly existed, the identity of coconspirators, the specific offenses charged, the nature and scope of the activity, and the location of the events

detailed in the indictments. Magistrate Jackson concluded that the activities in California constituted one specific conspiracy and those in Missouri constituted yet another. She recommended that Tanner's motion to dismiss the Missouri indictment be denied, and the district court accepted this recommendation.

## I.

■ We are met at the outset with a jurisdictional question regarding the timeliness of this appeal, and although we requested briefing on it, that coming from the parties has not been particularly helpful. Magistrate Jackson's recommendation was filed May 24, 1988. On July 14, the district court accepted the report and recommendation of the magistrate regarding Tanner's motion to dismiss the Missouri indictment. On July 25, Tanner filed a notice of appeal seeking interlocutory review. On August 5, the district court entered an order which certified that immediate appeal from its July 14 order "may materially advance the ultimate termination of the litigation." On the same day, Tanner filed another notice of appeal.

Double jeopardy doubtlessly is an issue that may be raised in an interlocutory appeal. *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977). Tanner filed the notice of appeal on July 25, eleven days after the district court entered its order denying Tanner's motion to dismiss. It was untimely by one day. *See* Fed.R.App.P. 4(b). However, in *United States v. Grabinski*, 674 F.2d 677, 679 (8th Cir.), *cert. denied*, 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982), we held that in double jeopardy cases a denial of a motion to dismiss may not be appealed where the defendant has failed to submit a colorable claim. We also suggested that district judges who deny such a motion to dismiss make written finding as to whether the motion is frivolous or nonfrivolous. *Id.* If it is nonfrivolous, then a motion to dismiss properly raises the issue of double jeopardy for appeal and divests the district court of jurisdiction. We interpret the district court's order of August 5,

while phrased in terms of civil certification under 28 U.S.C. § 1292(b), as a finding that his motion to dismiss is nonfrivolous. The notice of appeal filed on the same day therefore is adequate to vest this court with jurisdiction.

## II.

■ The approach taken by the magistrate with regard to Tanner's claims of double jeopardy was an appropriate one. In examining the allegations of the two indictments, she considered (1) time, (2) identify of coconspirators, (3) offenses charged, (4) overt acts establishing the scope of the alleged conspiracy, and (5) the places in which conspiratorial acts took place. *See Thomas*, 759 F.2d at 662, 666–67. As the government argues, Tanner was an entrepreneur who chose to operate in one fashion in California and another in Missouri. The California indictment alleged that Tanner obtained and marketed heroin in California. The Missouri indictment alleges that he arranged for the sending of money orders from Missouri to California, and obtained heroin and cocaine in the Los Angeles area which was sent to St. Louis by Express Mail. With this background we turn to the five factors set forth in *Thomas* as a basis for our analysis.

The first factor is time. The Missouri indictment charges Tanner with participation in a conspiracy existing from December, 1984 to March 1, 1986. The California indictment spanned from "a date unknown" until February 12, 1986. The two indictments thus overlap. However, while the overt acts detailed in the California indictment all transpired on the two days of February 11 and 12, 1986, those charged in the Missouri indictment occurred intermittently throughout a ten-month period commencing in March, 1985 and ending in January, 1986.

Second, we examine the identity of the alleged coconspirators. The Missouri indictment charges nine persons as being coconspirators with Tanner, while the California indictment names only two, neither of whom is mentioned in the Missouri indictment. With the exception of Tanner him-

self, the cast of characters actually indicted in Missouri is thus wholly different than that in California. Tanner nevertheless argues that two individuals, Mary Pearl Griggs and Joanne Freeman, are named in both indictments and that both are "central figures" in a single conspiracy. Griggs is indeed mentioned in an affidavit supporting the California indictment as being "actively engaged in the sale of narcotics" and as the individual who introduced DEA agents to Tanner. The affidavit makes clear, however, that Griggs played no role in the sale of heroin at the ABC Market in Los Angeles on February 12, 1986, and in essence the California indictment alleged conspiracy as to this transaction alone. Furthermore, and contrary to Tanner's assertion, Freeman is never mentioned by either the California indictment or its supporting affidavit. We conclude that as to the identity of alleged coconspirators, the Missouri indictment differs substantially from that of California.

Third, we look to the specific offenses charged. Both indictments charge conspiracies under 21 U.S.C. §§ 841(a)(1) and 846. The Missouri indictment charges a conspiracy to distribute heroin and cocaine, and the California indictment charged a conspiracy to possess heroin with intent to distribute it. While there is thus some commonality to the conspiracies outlined in the two indictments, it "is possible to have two different conspiracies to commit exactly the same type of crime." *Thomas*, 759 F.2d at 666.

We next examine the nature and scope of the activity which the government seeks to punish in each case. In California, Tanner essentially was charged with conspiring to obtain a supply of heroin in the Los Angeles area and selling it to a DEA agent there. By contrast, the Missouri indictment describes nothing so much as an ongoing mail-order narcotics operation which involves obtaining drugs in California and shipping them to Missouri. The Missouri indictment alleges the existence of a network in Missouri with which to facilitate the sale of both heroin and cocaine, and in this way sets forth a conspiracy of signifi-

cantly broader scope than did the California indictment.

Finally, we consider location. While it is true that Los Angeles serves as a center of activity in both indictments, the Missouri indictment involves Los Angeles only to the extent that cocaine and heroin were mailed from there and money orders received there. All acts narrated in the California indictment occurred within the Central District of California. By contrast, the Missouri indictment recites numerous acts which occurred in the St. Louis area and which significantly furthered the alleged conspiracy: individuals procured and sent money orders, received packages of narcotics, rented a hotel room, and conversed on the telephone. The Missouri indictment thus charges a true multi-state conspiracy.

### III.

We have considered Tanner's double jeopardy claim by comparing the two indictments and their supporting affidavits, and we conclude that they alleged the existence of two distinct conspiracies rather than a single overall agreement. The order of the district court is accordingly affirmed.