UNITED STATES of America,
Plaintiff–Appellee,

v.

Herbert Steve BENEFIELD,
Defendant–Appellant.

No. 88–8211.

United States Court of Appeals,
Eleventh Circuit.

June 8, 1989.

William L. Summers and Todd T. Armanini, Cleveland, Ohio, for defendant-appellant.

Wilmer Parker, III, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, Chief Judge, HILL, Circuit Judge, and MARCUS *, District Judge.

MARCUS, District Judge:

Defendant Herbert Steven Benefield appeals from the district court's denial of his amended motion to dismiss Count I of the Indictment and its failure to conduct a pretrial evidentiary hearing on his nonfrivolous double jeopardy claim. On this record, we hold that the district court erred in refusing the request for a hearing and we remand for that purpose.

## I. *Facts*

### a. *Galveston Indictment*

On November 6, 1986, the defendant was indicted in the United States District Court for the Southern District of Texas, Galveston Division, for conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. Count I specifically charged:

> From on or about August 1, 1986, until on or about September 23, 1986, in the Galveston Division of the Southern District of Texas, and within the jurisdiction of this Court, and elsewhere, ROBERT STEPHEN GASSOWAY, RANDALL DARREL FRNKA, STEVEN JESS BLACKWELL, HERBERT STEVEN BENEFIELD, RANDY NEIL SIMO-NEAUX, MICHAEL ROBERT BLITZ, JAMES NATHAN STUCKEY and CARLOS MANUEL RUBIO, defendants herein, did willfully, knowingly and intentionally combine, conspire, confederate and agree with persons known and unknown to the grand jury, to possess with intent to distribute approximately seven hundred sixty-one (761) gross pounds of marijuana, a Schedule I controlled substance. (Violation: Title 21, United States Code, Section 846).

Defendant Benefield appeared with counsel before the district court in the Southern District of Texas and entered a plea of guilty to Count I of the Galveston Indictment. He was subsequently sentenced to imprisonment for four years and, upon motion of the government, Count III of the Galveston Indictment was dismissed.[1]

### b. *Atlanta Indictment*

This appeal arises from a second indictment, filed on November 3, 1987, in the United States District Court for the Northern District of Georgia, Atlanta Division, charging Benefield, along with thirteen co-defendants, with conspiracy to possess marijuana and cocaine with intent to distribute, in violation of 21 U.S.C. § 846.[2] Count I of the Atlanta Indictment broadly alleges that the conspiracy took place between January 1984 and November 3, 1987. The count specifically charges defendant Benefield, along with others—including James Nathan Stuckey—with conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana and 500 grams of cocaine, Schedule I and Schedule II controlled substances. It alleges that Benefield, Stuckey and others obtained multi-kilogram quantities of marijuana which had been imported into the United States from Mexico and elsewhere, and that Crumbley purchased multi-kilogram

---

* Honorable Stanley Marcus, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Count III of the Galveston Indictment charged Benefield with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and alleged that the offense occurred on September 23, 1986.

2. Defendant Benefield is charged solely in the conspiracy count (Count I) of this four-count indictment. Only co-defendant Troy Paul Crumbley is named in all four counts.

quantities of marijuana from Benefield. This conspiracy is said to have involved numerous other named and unnamed individuals "who aided and assisted each other in traveling in interstate commerce from the Atlanta, Georgia area to Texas and elsewhere, and who obtained multiple-kilogram quantities of marijuana which they transported in private vehicles from the southwestern United States to the Atlanta, Georgia, area." Finally, the charge recounts that an object of the conspiracy was to possess with intent to distribute and to distribute marijuana and cocaine in the Northern District of Georgia and elsewhere.

On January 29, 1988, defendant filed an Amended Motion to Dismiss the Atlanta Indictment, claiming that the Atlanta Indictment charged him with the same conspiracy for which he was convicted in Galveston, Texas and, therefore, that the Atlanta Indictment should be barred by the Fifth Amendment double jeopardy clause. The defendant requested an evidentiary hearing on his double jeopardy claim. The United States Magistrate recommended that defendant's motion to dismiss be denied. On March 28, 1988, the district court held a pretrial conference whereupon defense counsel again asked for an evidentiary hearing and requested more time to obtain the transcript of the plea colloquy in Texas. Counsel reported that he had ordered but had not yet received the transcript. Although the district court stated specifically that it did not find the double jeopardy claim to be frivolous, and that it was willing to review any written materials submitted before the impending trial, it denied defendant's request for a hearing. And on March 31, 1989, the district court entered its order adopting the Magistrate's Report and denying the motion to dismiss.

## II. *Double Jeopardy*

■ A denial of a motion to dismiss based on double jeopardy grounds is an appealable final order. *See, e.g., Abney v.* *United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977); *United States v. Henry,* 661 F.2d 894, 896 n. 3 (5th Cir. Unit B 1981)[3], *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982). Moreover, as a question of law, a district court's double jeopardy ruling is subject to *de novo* review by the appellate court.

■ It is well settled that to support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense. *United States v. Marable,* 578 F.2d 151, 153 (5th Cir.1978). The gist of the crime of conspiracy, and the characteristic which defines its breadth, is the unlawful agreement. *Id.* at 153. At its core, the determination as to whether the government can prosecute a defendant for more than one conspiracy turns on whether there exists more than one unlawful agreement. *Id.* The commission of crimes at different times does not necessarily prove that the crimes were carried out pursuant to more than one agreement. *See United States v. Kalish,* 690 F.2d 1144, 1151 (5th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). "A single agreement to commit several crimes constitutes one conspiracy." *United States v. Broce,* —— U.S. ——, 109 S.Ct. 757, 763, 102 L.Ed.2d 927 (1989).

■ When a defendant moves to dismiss an indictment on double jeopardy grounds, it is undisputed that he bears the burden of making a prima facie nonfrivolous claim. *United States v. Stricklin,* 591 F.2d 1112, 1117–18 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979). Once the defendant has met this initial burden, the government must prove by a preponderance of the evidence that the two indictments charge separate crimes. *United States v. Loyd,* 743 F.2d 1555, 1563 (11th Cir.1984); *United States v. Garcia,* 721 F.2d 721, 723 (11th Cir.1983). How the government sets about this task will undoubtedly vary from case to case. In some

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981, and in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), adopted all Unit B decisions of the Fifth Circuit.

instances, a close textual analysis of the two charges may refute the claim. Because it is often difficult to identify the specific objects and particular parties to an unlawful agreement, the courts may look to extrinsic evidence, beyond the four corners of the charging instruments, in order to determine a conspiracy's scope. *See Kalish*, 690 F.2d at 1151. An examination of whatever materials the government may choose to proffer—such as a DEA Six Report or an affidavit or a transcript of a judicial proceeding—may be sufficient. Where, however, the proffered materials fail to establish that two separate crimes are charged, an evidentiary hearing may be required. In such cases, the government may meet its burden by presenting further evidence or testimony to the trial court. *See United States v. Atkins*, 834 F.2d 426, 440 (5th Cir.1987) ("[W]here vague allegations suggest the reasonable possibility of a double jeopardy violation but do not prove one, a court ... must consider evidence outside the indictments when it is offered.").[4] What remains constant in each case, however, is that the government's burden of persuasion is met by a preponderance of the evidence.

■ In the case at bar, the defendant was charged in both the Atlanta and Galveston Indictments with conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846. In *United States v. Marable*, the Fifth Circuit underscored the difficulty in identifying the parameters of section 846 conspiracies:

Prosecutions under 21 U.S.C.A. § 846, the general drug conspiracy statute ..., present an even greater need for defining the bounds of a conspiracy from an examination of the record than do prosecutions under the general criminal conspiracy statute, 18 U.S.C.A. § 371.... [A] Section 846 indictment is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspir-

acy was operative and the statute allegedly violated, even if it fails to allege or prove any specific overt act in furtherance of the conspiracy. Thus, because a section 846 indictment may be tightly drawn, the court must look to the record to determine whether constituent elements of the two conspiracies charged indicate that the government has twice placed the defendant in jeopardy.

*Marable*, 578 F.2d at 153–54 (citations omitted). In *Marable*, the Court enumerated a set of factors to help determine whether there is but a single conspiracy:

(1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

*Marable*, 578 F.2d at 154, (cited in *United States v. Loyd*, 743 F.2d at 1562); *see also Garcia*, 721 F.2d at 724 n. 6.

Where a defendant has entered a guilty plea in response to a conspiracy charge in one district and later is charged again with conspiracy under the same statute in another district, it is particularly difficult, because of the absence of a trial record in the first case, to determine whether the conspiracies arose from one unlawful agreement or two. *See Atkins*, 834 F.2d at 434.

Here, because the district court did not find that the defendant's double jeopardy claim was frivolous—and we have concluded that the claim is nonfrivolous—the burden was on the government to show by a preponderance of the evidence that the two indictments at issue involved charges of two distinct and unlawful agreements. In reviewing the defendant's motion to dismiss the Atlanta Indictment, the trial judge had before him the Atlanta and Galveston

---

**4.** The claim in *Atkins* arose in a post-conviction challenge following a plea of guilty to the second indictment. The procedural holding of *Atkins* has been undermined by the decision of the Supreme Court in *United States v. Broce*, — U.S. —, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), which restricted post-conviction collateral review of a double jeopardy claim to the face of the indictment. We believe, however, that the analysis in *Atkins* of the merits of the double jeopardy question remains viable and is persuasive precedent.

Indictments; two DEA Form Six Reports, one summarizing the events leading up to the arrest of defendant Benefield on September 23, 1986, and one summarizing two meetings between Troy Crumbley and officer Stubbs and DEA Special Agents Harvey and Bachman; and, finally, the affidavit of DEA Special Agent John F. Harvey.

The government's proffer, far from dispelling defendant's claim of a single conspiracy, intensifies the appearance that the two indictments refer to a single illegal agreement. We examine these facts using the *Marable* mode of analysis.

The time frame charged in the Galveston conspiracy falls squarely within the broader period alleged in the Atlanta Indictment. The conspiracy in Galveston occurred between August 1, 1986 and September 23, 1986; the conspiracy charged in Atlanta was said to have occurred between January of 1984 and November 3, 1987.[5] Moreover, because Count I of the Galveston Indictment is drafted in such vague terms, and because Count I of the Atlanta Indictment contains no factual allegations which would enable the court to discern that the Atlanta agreement was separate and distinct from the Galveston agreement, it is impossible to tell merely from examining the two indictments whether the agreements charged in each are one and the same.

■ Although the only common conspirators named in both indictments are defendant Benefield and James Nathan Stuckey, both indictments make reference to "others, known and unknown to the Grand Jury...." Furthermore, the fact that a conspiracy must take on additional members to accomplish one of its objectives

does not in itself establish a different conspiracy. *See, e.g., Kalish,* 690 F.2d at 1151; *United States v. Michel,* 588 F.2d 986, 995 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979).

Count I of the Galveston Indictment did not charge defendant Benefield with any specific overt acts. While the Atlanta Indictment did charge the defendant with specific overt acts, the absence of any specific allegations in Count I of the Galveston Indictment and the failure of the district court to review the plea transcript to ascertain whether it would reveal the parameters of the Galveston conspiracy, also make it impossible for this Court to determine whether there were two conspiracies or only one.

As to the location of the alleged crimes, the Galveston Indictment says that the Galveston conspiracy took place "in the Galveston division of the Southern District of Texas, and within the jurisdiction of this Court, and elsewhere...." The Galveston DEA Form Six report indicates that shortly before his arrest in Texas in 1986, Benefield said that he had a large marijuana distribution network covering the South. The Atlanta Indictment charges that it was a primary object of the Atlanta conspiracy to obtain multi-kilogram quantities of marijuana from the southwestern United States, particularly the State of Texas, and to transport the marijuana to the Atlanta, Georgia area. Thus, at a minimum, the areas of operation alleged in the two indictments appear to overlap substantially.

Additionally, the DEA Report summarizing the events leading up to Benefield's arrest in 1986 in Galveston reveals that Benefield told undercover DEA agents that

5. A similar issue arose in *United States v. Dunn,* 775 F.2d 604 (5th Cir.1985), where an indictment filed in Austin, Texas, charged the defendant with a conspiracy covering the period from July 23, 1980, and continuing until the defendant's arrest on November 9, 1980. Following his conviction on that charge, the defendant was indicted again in San Antonio, Texas, with a similar conspiracy beginning early in 1979 and continuing until April, 1983. After the defendant filed a motion to dismiss the second indictment as barred by double jeopardy, the government superseded the San Antonio indictment and notably limited the charge to a period running from November 14, 1980, and continuing until June 3, 1982. The superseding indictment named the defendant in overt acts which allegedly took place *after* his arrest on November 8, 1980, in Austin. The Fifth Circuit reviewed the time differential as one factor in the analysis, observing that an individual's participation in a conspiracy ends when he is arrested for that conspiracy, and that his participation in an "old" conspiracy following his arrest becomes a "new" offense for purposes of double jeopardy. *Id.* at 607, *citing United States v. Stricklin,* 591 F.2d at 1121 n. 2.

he imported large quantities of marijuana from Mexico and distributed it in the Atlanta, Georgia, area, where he had "a large distribution network." These statements are wholly consistent with the affidavit of Special Agent John F. Harvey who said that Troy Crumbley—the main defendant in the Atlanta Indictment, but not named in the Galveston Indictment—stated during both pre- and post-arrest interviews that he had distributed multi-thousand pounds of marijuana in the Atlanta, Georgia, area between 1985 and 1987, and that his source for marijuana was Herbert Benefield. In fact, Crumbley described to agents in detail his normal routine with Benefield, smuggling marijuana from Texas to Atlanta. Crumbley also informed agents that Benefield's major drug and money courier was James Stuckey, and that Benefield and Stuckey split their time between Georgia and Texas. Both Benefield and Stuckey are named in Count I of the Atlanta and Galveston Indictments.

The Harvey affidavit also reveals that Benefield was Crumbley's Texas marijuana source. Co-defendant Parker told Harvey that Benefield imported tons of marijuana from Mexico into the United States via garbage trucks, and that large amounts of this marijuana would then be transported to Crumbley in Georgia. Both the DEA Report regarding the Galveston conspiracy and the DEA Report and Harvey affidavit relating to the purported Atlanta conspiracy make direct reference to Benefield and Stuckey, to their involvement in an Atlanta marijuana distribution system, and, finally, to Benefield's long-standing smuggling relationship with Crumbley.

While the Galveston Indictment appears to involve only the discrete sale of

761 pounds of marijuana by two undercover DEA agents to defendant Benefield through two individuals named Gassoway and Blitz, if that purchase of contraband by Benefield was designed and intended to be sent to Crumbley for distribution in Georgia, the Galveston conspiracy would simply be a small portion of the broadly charged Atlanta conspiracy, and the Atlanta conspiracy, as charged, would therefore be barred by the command of double jeopardy.[6] If, on the other hand, the 761 pounds was intended for a different distributee or purchaser, perhaps at a different location, then the Atlanta charge would not be barred by the Galveston plea and sentence, for a defendant may be involved in more than one conspiracy during the same period of time. *See Stricklin,* 591 F.2d at 1124.

In sum, (1) the complete overlap in time manifest in both Indictments (1986 events encompassed within 1984 to 1987 events), (2) the defendants common to both Indictments (Benefield and Stuckey), (3) the commonality of the offenses charged in each case (conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846), (4) the similarity in geography (Georgia and Texas) and, finally (5) the nature and scope of the activity sought to be punished by the Galveston and Atlanta Indictments (marijuana imported from Mexico into Texas and transported to Georgia for distribution), all point to the conclusion that this double jeopardy claim cannot be resolved without an evidentiary hearing. Accordingly, this cause is VACATED and REMANDED.

---

6. The Magistrate's analysis founders, we believe, on this issue. He considered the Galveston Indictment to be much narrower in scope than the Atlanta Indictment—which it surely was—and then he concluded that this observation supported a finding of two separate conspiracies. However, merely because the government first charged only a portion of an overall scheme does not thereby defeat the application of the double jeopardy clause. *See Loyd,* 743 F.2d at 1563 (where narrower first conspiracy in Palm Beach County terminated around August 4, 1981, while second conspiracy in Dade, Broward and Palm Beach Counties encompassed events beginning some unknown time prior to June 1977 and continuing until February 1982, and where both included an agreement to possess with intent to distribute contraband, second conspiracy barred by double jeopardy concerns). Indeed, Benefield told the agents in Texas that he could handle all of the marijuana that they could furnish. This statement intensifies the appearance of a single, long-term conspiracy wherein the defendant and Stuckey allegedly acted as the basic source of supply for Crumbley and his Atlanta organization.