**UNITED STATES of America, Appellee,**

v.

**Rick Roland KIENZLE, Appellant.**

No. 89–5302.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 17, 1990.
Decided Feb. 20, 1990.

David G. Roston, Minneapolis, Minn., for appellant.

Elizabeth de la Vega, Minneapolis, Minn., for appellee.

Before BOWMAN, WOLLMAN and BEAM, Circuit Judges.

BOWMAN, Circuit Judge.

Rick Roland Kienzle appeals his convictions on counts of filing false tax returns for the 1983 and 1984 calendar years by understating his income, a violation of 26 U.S.C. § 7206(1) (1982) (Counts I and II); filing a false tax return for the 1985 calendar year by misstating his source of income, a violation of 26 U.S.C. § 7206(1) (Count III); and conspiracy to distribute cocaine, a violation of 21 U.S.C. § 846 (1988) (Count IV). We affirm.

In 1981, Kienzle met Joseph Sazenski, a drug dealer who pleaded guilty in 1986 to operating a continuing criminal enterprise. The two men began doing business together. Although Kienzle maintains that his relationship with Sazenski was strictly legitimate, the Government's proof shows that Kienzle, supervised by Sazenski, transported over one million dollars worth of cocaine into the state of Minnesota between 1983 and 1986.

Kienzle and Sazenski travelled to California in the early 1980's where they met David Immel. Immel, the right hand man of a high level narcotics trafficker named Michael Dawson[1], sold them a large quantity of homegrown marijuana. After assisting with the packing of the marijuana, Kienzle allegedly transported it to Minnesota. In 1983, Kienzle and Sazenski returned to California. Immel introduced the pair to Dawson. Their meeting, which took place at Dawson's ranch in Oroville, California, resulted in another purchase of a large quantity of California-grown marijuana. Again, Kienzle transported the marijuana to Minnesota for Sazenski.

By 1984, Dawson was dealing exclusively in cocaine. Sazenski would make arrangements to buy several kilos of cocaine at a time from Dawson's ranch in Oroville. Both Sazenski and Kienzle would carry the cash to make the purchase. Sazenski paid Kienzle between $50,000.00 and $60,000.00 a year in 1984 and 1985 to transport the cocaine to Minnesota, where he would either leave it with Sazenski or drop it at a "stash house." When Dawson moved his operations to Florida, and later to Dallas, Kienzle made trips to those places to pick up cocaine and deliver it to Minnesota. Dawson obviously trusted Kienzle. His personal telephone book contained Kienzle's number, and his tolls reflected a number of calls to Kienzle's phone.

On one occasion in Minnesota, Sazenski told his cousin Dennis Sazenski that he was unable personally to make a cocaine delivery. Instead, the drop would be made by "Rick," described by Sazenski as his partner. Rick Kienzle delivered the cocaine to Dennis Sazenski at a hotel parking lot in Bloomington. When Dennis commented that the cocaine looked nice, Kienzle replied to the effect that they only dealt in the best.

Sazenski and Kienzle apparently did not restrict their dealings to the Dawson organization. In March 1985, Sazenski met with Peyton Eidson in Kelseyville, California to organize the purchase and shipment of large quantities of marijuana. To this end, Eidson and Sazenski travelled from Santa Barbara, California to Singapore to arrange for a load of Thai marijuana to be shipped to the United States. In May 1985, Kienzle journeyed to Singapore to deliver money to Eidson for the marijuana shipment. The marijuana arrived in California

---

1. Michael Dawson is currently serving a 70-year federal sentence for cocaine smuggling and distribution.

for intended distribution in California and other states.

On January 14, 1988, Kienzle was indicted in the United States District Court for the Northern District of California in connection with the Eidson import scheme for conspiracy to import marijuana, 21 U.S.C. § 963 (1988); for conspiracy to distribute and possess with the intent to distribute marijuana, 21 U.S.C. § 846; and for distributing marijuana and possessing it with the intent to distribute, 21 U.S.C. § 841(a)(1) (1988). He was convicted on the two conspiracy charges and was acquitted on the distribution charge.

Kienzle's dealings with the Dawson organization did not escape the notice of federal authorities. On April 7, 1988, he was indicted in the United States District Court for the District of Minnesota on the income tax and cocaine charges now at issue in this appeal. Kienzle moved, without success, to dismiss Count IV, conspiracy to distribute cocaine, on Double Jeopardy grounds, claiming that the conspiracy of which he already had been convicted in California was the same conspiracy now charged in Minnesota. The District Court[2] denied the motion.

At Kienzle's Minnesota trial, Joseph Sazenski, Dennis Sazenski, and David Immel, among others, testified concerning the cocaine conspiracy described above and Kienzle's role in the conspiracy. As to the tax charges, the Government introduced numerous financial records and the testimony of a Special Agent and a Revenue Agent. The jury found Kienzle guilty as charged on all counts.

While in prison awaiting sentencing, Kienzle met Mark Chapman, who was acquainted with Dennis Sazenski. Chapman told Kienzle that Dennis Sazenski had confided to Chapman, prior to Kienzle's trial, that he was about to testify about a cocaine transaction with Kienzle, whom he had never met, on the orders of his cousin Joseph Sazenski. Armed with Chapman's affidavit, Kienzle filed a motion for a new trial

on the basis of newly discovered evidence. The District Court denied the motion and sentenced Kienzle to three years on each of Counts I, II, and III and fifteen years on Count IV, all the sentences to be served concurrently.

On appeal to this Court, Kienzle contends that: (1) the Double Jeopardy Clause prohibited his trial in Minnesota on the cocaine conspiracy charge after he had been tried in California on the conspiracy charges arising out of the Thai marijuana caper; (2) the District Court abused its discretion in denying his motion for a new trial; (3) the evidence was insufficient to prove guilt beyond a reasonable doubt; and (4) the District Court abused its discretion in sentencing.

I.

Kienzle argues that the Government has carved two conspiracies out of a single conspiracy and therefore that the Double Jeopardy Clause prohibited his trial in Minnesota on the cocaine conspiracy after he had been tried in California on the marijuana conspiracy. The Double Jeopardy Clause of the Fifth Amendment protects against multiple prosecutions for the same offense. *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 306–07, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 (1984). The Clause further prohibits the subdivision of a single conspiracy into multiple violations of one conspiracy statute. *Braverman v. United States,* 317 U.S. 49, 52–54, 63 S.Ct. 99, 101–02, 87 L.Ed. 23 (1942). In determining whether multiple conspiracies exist, this Court employs a "totality of the circumstances" test. *See United States v. Thomas,* 759 F.2d 659, 662 (8th Cir.1985). Under this test, the following five factors are to be considered: "(1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government

2. The Honorable Edward J. Devitt, United States District Judge for the District of Minnesota.

sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place." *Id.* A careful examination of these factors convinces us that two separate conspiracies properly have been charged.

### 1. *Time*

The California indictment charges a conspiracy beginning no later than March 1985 and continuing to August 1985. The conspiracy charged in Minnesota began in January 1983 and ended in 1986. While there is an overlap in the time periods, the conspiracy charged in the Minnesota indictment both predated and continued beyond the ending date of that charged in California.

### 2. *Identity of Co–Conspirators*

With the exception of Joseph Sazenski and Kienzle, none of the co-conspirators named in the California indictment were implicated in the instant case. It appears that Sazenski and Kienzle are the only common co-conspirators and that each conspiracy involved a significant number of other individuals.

### 3. *Offenses Charged*

The California indictment charged: (1) conspiracy to import marijuana, 21 U.S.C. § 963; (2) conspiracy to distribute and possession with the intent to distribute marijuana, 21 U.S.C. § 846; and (3) distribution and possession with the intent to distribute marijuana, 21 U.S.C. § 841(a)(1). Charged in the indictment in Minnesota are three violations of 26 U.S.C. § 7206(1) for filing false tax returns, and a violation of 21 U.S.C. § 846 for conspiracy to distribute cocaine.

While both indictments charge, among other things, a drug conspiracy violative of the same statute, 21 U.S.C. § 846, entirely different controlled substances are named.[3] The California indictment charged a mari-

juana conspiracy; the Minnesota indictment charges a cocaine conspiracy. As this Court has pointed out, "it 'is possible to have two different conspiracies to commit exactly the same type of crime.' " *United States v. Tanner,* 860 F.2d 864, 867 (8th Cir.1988) (quoting *U.S. v. Thomas,* 759 F.2d 659 at 666 (8th Cir.1985)).

### 4. *Nature and Scope of Activities Charged*

The indictment in California targets a one-time scheme in 1985 to import marijuana from Thailand and to distribute it to buyers in California, Minnesota, Nevada, and elsewhere. The Minnesota indictment, on the other hand, involves a conspiracy continuing over a two and one-half year period to obtain large quantities of cocaine from Michael Dawson for distribution in Minnesota. Thus, the activities charged are quite distinct.

### 5. *Location*

The indictment in California alleged activities in the San Francisco and Santa Barbara areas of California as well as in Asia. The Thai marijuana involved in this plot was obtained in Singapore and was brought to California for distribution there and elsewhere. In the present case, the cocaine was purchased in California, Texas, and Florida, and transported to Minnesota for distribution there. The two conspiracies have some geographical overlap, but each conspiracy also involves places not involved in the other.

Based upon a careful review of the above factors, it is clear that Kienzle was properly charged with participation in two separate conspiracies. The charged conspiracies occupied different time spans, focused on different controlled substances, and involved largely different people, places, and activities. We therefore find that Kienzle's right to be free from double jeopardy has not been violated.

---

**3.** The fact that two different controlled substances were involved, among other factors, distinguishes this case from *United States v. Tercero,* 580 F.2d 312 (8th Cir.1978), in which this Court found that only one conspiracy existed.

In *Tercero,* a single drug, marijuana, was named in the two indictments at issue. *Id.* at 313. Further, there was significant overlap in personnel in each alleged conspiracy. *Id.* at 316. These factors are not present in Kienzle's case.

**330**

## II.

■ Kienzle also contends that the District Court abused its discretion in denying his motion for a new trial. In support of this argument, Kienzle presents the affidavit[4] of Mark Chapman, a prison acquaintance of Dennis Sazenski. According to Chapman, Dennis Sazenski confided that his cousin Joseph Sazenski had told him to testify against Kienzle, whom Dennis did not know, in order to get out of prison quickly. In order to obtain a new trial on the basis of newly discovered evidence, Kienzle must show that:

(1) the evidence must be in fact newly discovered, that is, discovered since the trial;

(2) facts must be alleged from which the court may infer diligence on the part of the movant;

(3) the evidence relied upon must not be merely cumulative or impeaching;

(4) it must be material to the issues involved; and

(5) it must be of such a nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*See United States v. Begnaud,* 848 F.2d 111, 113–15 (8th Cir.1988).

■ Kienzle's evidence does not satisfy the above requirements. Although it is newly discovered and does not indicate a lack of diligence, we believe that Chapman's affidavit is, at best, impeaching evidence which is not material and would not be likely to result in an acquittal on retrial. First, Chapman's account, even if believed, does not prove perjury. It is possible that Dennis Sazenski made the statements that Chapman says he made in order to avoid being thought an informant. Further, at Kienzle's trial his attorney fully explored on cross-examination Dennis Sazenski's possible motives for fabricating testimony. Even assuming that the testimony was false, it was but a small portion of the overwhelming evidence of Kienzle's guilt produced at trial. Consequently, Kienzle's

newly discovered evidence is insufficient to warrant a new trial and the District Court did not abuse its discretion in denying his motion.

## III.

We have carefully considered the other issues raised by Kienzle and find them to be entirely without merit. Having been shown no reason for reversal, we affirm Kienzle's convictions on all four counts. We also affirm his sentence.

AFFIRMED.

**4.** It is established law that " 'a motion for new trial based on newly discovered evidence may be decided ordinarily upon affidavits without a hearing.' " *United States v. Begnaud,* 848 F.2d 111, 113–15 (8th Cir.1988) (quoting *United States v. Ward,* 544 F.2d 975, 976 (8th Cir. 1976)).