**UNITED STATES of America, Appellee,**

v.

**Lonnie James BROWN, Appellant.**

**No. 90–2345.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1991.

Decided March 1, 1991.

---

Byron Rhodes, Hot Springs, Ark., for appellant.

Steven Snyder, Ft. Smith, Ark., for appellee.

Before McMILLIAN, FAGG and MAGILL, Circuit Judges.

PER CURIAM.

Lonnie James Brown appeals from orders entered in the District Court[1] for the Western District of Arkansas denying his motions to dismiss the indictment because of double jeopardy, and to stay proceedings pending appeal of the dismissed motions. For the reasons discussed below, we affirm.

An indictment was returned in December 1989 charging Brown and codefendant Russell L. Kook with conspiring to distribute marijuana between May and June 21, 1989. The indictment alleged Kook telephoned Brown on June 11 and 20 to arrange a meeting; on June 21 Kook traveled to Mt. Ida, Arkansas, where he received directions for meeting Brown; and Brown and Kook met at a Safeway grocery store in Hot Springs, Arkansas, on June 21. Brown moved to dismiss the indictment, claiming that the alleged supporting facts—the time period, the places, the persons, and the overt acts—were essentially the same as those for his prior conspiracy convictions under the same statutes, 21 U.S.C. §§ 841(a)(1) and 846. Brown attached the two prior indictments returned against him in August 1989.

The first indictment charged Brown and Allan R. Thompson with conspiring to distribute marijuana between June 5 and June 21, 1989. The indictment alleged that Brown and Thompson had telephone conversations on June 5 and 7; they met in a Safeway parking lot in Hot Springs on June 21, proceeded to a storage area where 3,000 pounds of marijuana were stored, and inspected the marijuana; and Thompson purchased some for $20,000. The second indictment charged Brown and Sam C. Wainwright with conspiring to distribute marijuana between June 8 and June 21, 1989. The indictment alleged that Wainwright telephoned Brown on June 8 and 13; Brown traveled to Hope, Arkansas, on June 12; Brown discussed the dates the marijuana would be transported to Arkansas and agreed to meet Wainwright at the Safeway in Hot Springs; and they met in the Safeway parking lot on June 21. This indictment also charged Brown with seven counts of distributing marijuana, one count of conspiring with Wainwright to distribute

---

**1.** The Honorable Oren Harris, Senior United States District Judge for the Western District of Arkansas.

cocaine, three counts of distributing cocaine, and seven counts of possessing firearms and ammunition, all between January 6 and June 21, 1989. The cases under these two prior indictments were consolidated for trial and Brown was found guilty of all charges by a jury in February 1990.

The government's response summarized the testimony presented at that trial as follows in part: Undercover agent Roberts agreed to supply 3,000 pounds of marijuana to Brown, who told Roberts he had buyers in the midwest, Miami and Atlanta. Brown arranged to have the marijuana delivered in Arkansas, and then to have his buyers come to Arkansas. A government informant met Brown, Thompson and Wainwright at Brown's home on June 20. The following day these four persons met Roberts at noon in the Safeway parking lot. Wainwright was arrested in the parking lot while Brown and Thompson were arrested at the storage area.

The government argued that Brown acted as a broker and dealt individually with his buyers, agreeing, for example, to trade 1,000 pounds of marijuana to Wainwright for 15 kilos of cocaine, and to sell 40 pounds of marijuana to Thompson for cash. The government also attached to its response the transcribed telephone conversations between Brown and Kook. These conversations indicate that Kook expected to meet Brown on June 21, 1989, and knew Brown was dealing with other buyers at the same time. They do not indicate that Kook had any relationship with Thompson or Wainwright.

The district court denied Brown's motion, finding the government intended to prove a separate conspiracy because the conduct and persons involved in the present indictment did not duplicate the conduct and persons involved in the prior actions. The court also denied Brown's motion for a stay of proceedings pending appeal, finding it was solely for the purpose of delay. Brown filed this appeal before trial commenced, but he did not request this court to stay proceedings below. Brown was convicted on August 31, 1990.

Initially, it must be determined whether the district court retained jurisdiction to proceed with the trial after Brown appealed the denial of his double jeopardy motion. The denial of a motion to dismiss on double jeopardy grounds may be raised in an interlocutory appeal. *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977). We have held, however, that if the district court finds a defendant has failed to make a colorable showing of "previous jeopardy and the threat of repeated jeopardy," the filing of a notice of appeal from the denial of the double jeopardy motion does not divest the district court of jurisdiction. *United States v. Grabinski*, 674 F.2d 677, 679 (8th Cir.) (en banc) (per curiam) ("contrary rule would render the district courts powerless to prevent dilatory tactics"), *cert. denied*, 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982). In *Grabinski*, we directed district courts to make a written finding of whether a double jeopardy claim is frivolous or nonfrivolous (i.e., colorable), with a "frivolous" finding to be followed by expedited review on appeal. *Id.* Upon such review, this court should dismiss the appeal for lack of jurisdiction if we also find the claim is frivolous. *Id.* at 679–80 (dismissed for lack of jurisdiction because jeopardy had not attached to prior dismissed indictment).

Here, even though the district court did not explicitly state it found the motion frivolous, we infer such a finding from the manner in which it disposed of the motion (relying primarily on the indictments without a hearing) and its refusal to stay proceedings. *See United States v. Tanner*, 860 F.2d 864, 866 (8th Cir.1988) (inferring finding from district court's order). We believe, however, that Brown has stated a colorable claim, and thus we will address the merits.

The double jeopardy clause prohibits the subdivision of a single conspiracy into multiple violations. *Braverman v. United States*, 317 U.S. 49, 52–54, 63 S.Ct. 99, 101–02, 87 L.Ed. 23 (1942). In determining whether multiple conspiracies exist, this court uses a "totality of the circumstances" test with five factors as guide-

lines: "(1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place." *United States v. Thomas,* 759 F.2d 659, 662 (8th Cir.1985); *see also United States v. Kienzle,* 896 F.2d 326, 328–29 (8th Cir.1990). "The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object." *Thomas,* 759 F.2d at 662.

■ The record in this case supports that there were "separate agreements made at different times and by different people." *Id.* at 667. Although Brown's three coconspirators under the present and prior indictments met him on the same day in the same place to complete their drug deals, and all three indictments included a charge for conspiracy to distribute marijuana, that "conspiracies overlap at times does not prove that there was only one conspiracy." *Id.* The record fails to show any relationship among the coconspirators, other than Brown's connection with each transaction. *See Kotteakos v. United States,* 328 U.S. 750, 754–55, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946) (describing multiple conspiracies as " 'separate spokes meeting in a common center' ... without the rim of the wheel to enclose the spokes"); *cf. United States v. Tercero,* 580 F.2d 312, 316 & n. 15 (8th Cir.1978) (single conspiracy where parallel sales operations were accompanied by mutual dependence and support as evidenced by friendships during relevant time period and awareness of one another's activities; relationship of personnel "neither casual nor spasmodic").

Brown's motion to stay proceedings pending appeal of the denial of his motion to dismiss is moot because Brown has been tried and convicted. Brown's motion to dismiss the indictment for prosecutorial

vindictiveness is not properly before us on this appeal.

Accordingly, we affirm.