UNITED STATES of America, Appellee,

v.

Michael Lenox OKOLIE, Appellant.

No. 92–3149.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1993.

Decided Aug. 25, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 8, 1993.

John W. Hall, Little Rock, AR, argued for appellant.

Howard J. Marcus, Asst. U.S. Atty., St. Louis, MO, argued for appellee.

Before BOWMAN and MAGILL, Circuit Judges, and HENDREN,* District Judge.

HENDREN, District Judge.

This appeal follows from the entry of a conditional guilty plea by Michael Lenox Okolie and the judgment of the district court[1] adjudging Okolie guilty and sentencing him to be imprisoned for a period of 121 months. The indictment in this case was filed in the Eastern District of Missouri on October 23, 1991, charging Michael Okolie and his wife, Marie Carmelle Okolie, with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. sections 841(a) & (b) and 846 between March 1989 and March 1991. Mi-

---

* The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Honorable George F. Gunn, Jr. District Judge for the Eastern District of Missouri.

chael Okolie was also charged with two counts of money laundering in violation of 18 U.S.C. section 1956(a)(1)(A)(i) and (2) based on wire transfers of currency allegedly committed on March 28, 1990 and August 8, 1990. On May 4, 1992, Okolie entered a conditional plea of guilty, reserving the right to appeal the denial of his motion to dismiss, wherein he asserted a violation of the double jeopardy clause of the Fifth Amendment.

Prior to the indictment in this case, on July 27, 1990, Okolie, along with twelve other persons, was indicted in the Southern District of Florida for conspiracy to distribute heroin and cocaine from in or about December 1986, to on or about July 26, 1990, in Dade County, Florida "and elsewhere." Okolie was also charged with distributing heroin in Dade County on May 24, 1990.

The Florida indictment contained no allegations of overt acts committed in furtherance of the conspiracy. The principal focus of the investigation that led to the indictment was an illegal narcotics operation in Miami headed by Sam Manko, the lead defendant in that case. Manko was also charged with conducting a continuing criminal enterprise during the same period as the conspiracy.

The motion to dismiss was initially considered by United States Magistrate Judge Carol E. Jackson pursuant to an order of the district court referring all pre-trial matters for appropriate disposition under 28 U.S.C. section 636(b). The magistrate judge, in her report and recommendation, recommended that Okolie's motion to dismiss be denied, relying upon the analysis set forth in *Kotteakos v. United States*, 328 U.S. 750, 769, 66 S.Ct. 1239, 1250, 90 L.Ed. 1557 (1946) and followed by this Circuit in *United States v. Snider*, 720 F.2d 985, 988 (8th Cir.1983), as well as the factors set forth in *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir.1985). Magistrate Jackson concluded that the Missouri indictment alleged a conspiracy that is separate and distinct from the conspiracy for which Okolie was convicted in Florida. The district court accepted the magistrate's recommendation and ordered that the motion to dismiss based on double jeopardy be denied. For the reasons discussed below, we affirm.

On appeal, Michael Lenox Okolie contends that the district court erred in denying his motion to dismiss on double jeopardy grounds because the charges alleged in the Missouri indictment and the charge for which he was convicted in Florida were based on a single conspiracy. He claims that the magistrate and the district court erred in (1) applying the wrong legal standard in determining that Okolie's claim was "frivolous"; (2) failing to shift the burden to the government to prove two separate conspiracies; and (3) deciding the double jeopardy issue without the benefit of an evidentiary hearing.

It is well settled that the double jeopardy clause of the Fifth Amendment prohibits the subdivision of a single criminal conspiracy into multiple violations. *Braverman v. United States*, 317 U.S. 49, 52–53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942); *United States v. Brown*, 926 F.2d 779 (8th Cir.1991); *United States v. Kienzle*, 896 F.2d 326, 328 (8th Cir.1990). In order to support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense. *United States v. Benefield*, 874 F.2d 1503, 1505 (11th Cir. 1989); *United States v. Marable*, 578 F.2d 151, 153 (5th Cir.1978). The defendant bears the initial burden of showing a non-frivolous claim of double jeopardy. *United States v. Thomas*, 759 F.2d at 662. Once the defendant has made that initial showing, the burden shifts to the government to show by a preponderance of the evidence that the two conspiracy indictments charge two separate offenses. *United States v. Tercero*, 580 F.2d 312, 315 n. 12 (8th Cir.1978). On appeal, this court reviews the issue of double jeopardy *de novo*. *United States v. Benefield*, 874 F.2d at 1505.

Okolie first contends that the magistrate erred in applying the "same evidence" test enunciated in *United States v. Young*, 503 F.2d 1072, 1075–76 (3rd Cir.1974) and *United States v. Mallah*, 503 F.2d 971, 985 (2nd Cir.1974) as opposed to the totality of the circumstances test set forth by this court in *United States v. Thomas*, 759 F.2d at 662. Okolie claims that by basing her report and recommendation on the examination of the two indictments and the evidence submitted

from the Florida trial and the evidence that the government planned to present at the trial of the Missouri case, the magistrate and the district court required nothing of the government by way of proof or explanation.

■ Under the "same evidence" test, offenses are the "same" for purposes of the double jeopardy guarantee when the evidence required to support a conviction upon one of the indictments could have been sufficient to warrant a conviction upon the other. *United States v. Mallah*, 503 F.2d 971 at 985 (quoting *United States v. Kramer*, 289 F.2d 909, 913 (2nd Cir.1961)). In *United States v. Tercero*, 580 F.2d at 314–315, this court noted that the efficacy of the "same evidence" test has been questioned in regard to criminal conspiracy cases. The court reasoned that the government often has many overt acts and co-conspirators which it can charge in an indictment and is able to choose one set of overt acts in one indictment and a different set of overt acts in another indictment which results in repeated prosecutions for what is in reality the same criminal conspiracy. *United States v. Tercero*, 580 F.2d at 314–15. *See also United States v. Ragins*, 840 F.2d 1184, 1188 (4th Cir.1988). The courts have now adopted the "totality of the circumstances" test to determine whether multiple conspiracies exist. Under this test, the court considers the following five factors: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. *United States v. Thomas*, 759 F.2d at 662. *See also United States v. Standefer*, 948 F.2d 426, 431 (8th Cir.1991); *United States v. Kienzle*, 896 F.2d 326, 328–29 (8th Cir.1990).

■ Although the magistrate did not specifically use the term "totality of the circumstances", we are convinced that she applied the correct test. In fact, her report and recommendation liberally cited to *United States v. Thomas* and included a detailed analysis of the factors set forth in that case.

■ In analyzing the first factor concerning time, we note that the conspiracy in the Southern District of Florida was alleged to have occurred from December 1986 to July 25, 1990, while the conspiracy in the Eastern District of Missouri was alleged to have spanned from March 1989 to March 1991. Although there is a partial overlap between the two conspiracies of approximately sixteen months, the Missouri conspiracy continued for almost eight months after the Florida indictment was returned. Such a period of time is significant as it is indicative of a separate and ongoing agreement.

Second, we examine the identity of the alleged co-conspirators. The Florida indictment charges twelve persons as being co-conspirators with Okolie, while the Missouri indictment charges only one, Marie Carmelle Okolie, the appellant's wife. Mrs. Okolie was not indicted in the Florida indictment. Also, Joseph Dawson–Otoo, who was one of the defendants in the Florida case, is only named as an unindicted co-conspirator in one of the twenty-seven overt acts listed in the Missouri indictment. Therefore, with the exception of Okolie, the persons actually indicted in the two cases are not the same. *See United States v. Tanner*, 860 F.2d 864, 867 (8th Cir.1988). Clearly, the parties and their relationships are substantially different from that of Missouri.

As the third factor, we look to the specific offenses charged. Both indictments charge violations of 21 U.S.C. sections 841 and 846. The Florida indictment alleged a conspiracy to distribute heroin and cocaine. The Missouri indictment charged a conspiracy to distribute cocaine. While there is some similarity between the charges in the two indictments, it is not significant. As this court has pointed out, "it is possible to have two different conspiracies to commit exactly the same type of crime." *United States v. Tanner*, 860 F.2d at 867 (quoting *United States v. Thomas*, 759 F.2d at 666).

Fourth, we consider the nature and scope of the activity which the government seeks to punish in each case. In the Florida conspiracy, the appellant was alleged to have on occasion supplied heroin and some cocaine to

the Manko operation in Miami and was not investigated until the wire interception towards the end of the investigation. By contrast, in the Missouri case, the appellant was flying cocaine to St. Louis via charter and commercial airlines and supervising its distribution through his main dealers and other lower level dealers. Okolie and his wife would then convey the money from St. Louis to Miami via commercial airlines or via a charter or he would direct his dealers to wire transfer the drug proceeds to him or his wife. Okolie was more directly involved in the St. Louis conspiracy because he solicited the involvement of others, provided the cocaine which was distributed, and gave others direction regarding the disposition of the proceeds. Therefore, the nature and scope of the activities charged differs.

Finally, we look at the geographic location. The focus of the appellant's activities in the Florida indictment was Miami. In the Missouri indictment, the focus was St. Louis since all of the drugs were transported to and sold there. Although some of the drug proceeds were sent to Miami, that city was not significantly involved in the instant indictment.

Based upon our examination of the above five factors and the totality of the circumstances surrounding the two alleged conspiracies, we conclude that the Missouri conspiracy is separate and distinct from the Florida case. We agree with the district court that two distinct conspiracies existed rather than a single overall agreement. Clearly, there were two separate agreements made at different times by different people in different geographic locations. We therefore find that Okolie's double jeopardy right has not been violated.

The appellant also contends that the magistrate and the district court failed to shift the burden of proof to the government to show by a preponderance of the evidence that the two indictments charged two separate crimes. *United States v. Tercero*, 580 F.2d at 315, n. 12. Okolie claims that he satisfied his burden of proof of making a prima facie non-frivolous claim. *See Abney v. United States*, 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977).

Under the circumstances, our analysis of the five *Thomas* factors demonstrates that the appellant failed to meet his required burden of proof. Therefore, the burden never shifted to the government to rebut any finding of a non-frivolous claim. Even so, the government proffered a summary of the government's case in the Eastern District of Missouri, a copy of the government's affidavit in support of interception of wire communications from the Southern District of Florida, transcripts from the appellant's trial in Miami, the transcript of Joseph Dawson–Otoo's grand jury testimony, a St. Louis Metropolitan Police Department intelligence memo, and a D.E.A. debriefing and intelligence update of Otoo. Such evidence was sufficient to prove that the two indictments charged separate conspiracies.

■ Finally, Okolie contends that the magistrate erred in refusing to grant an evidentiary hearing to decide the double jeopardy issue. He claims that because the materials proffered by the government failed to establish that two separate crimes were charged, an evidentiary hearing was required. *See United States v. Benefield*, 874 F.2d at 1505–06.

The facts reveal that prior to the denial of appellant's motion to dismiss, two hearings were conducted. At the hearing before Magistrate Jackson, the appellant chose not to present any evidence. In her report and recommendation, Magistrate Jackson noted that "no testimony was heard despite the defendant's request for an evidentiary hearing."

At Okolie's request, a second hearing was held before the Honorable George F. Gunn, Jr., United States District Court Judge. The case was set for trial on March 16, 1992, but was continued. Due to the continuance, Joseph Dawson–Otoo had been returned to his correctional facility instead of holding him in St. Louis. The day before the double jeopardy hearing, appellant's counsel requested that the government produce Otoo at the hearing. Counsel was then informed that Otoo was enroute to his correctional facility.

Appellant's claim that he was unable to proceed without the presence of Joseph Daw-

son–Otoo at the hearing before Judge Gunn is without merit. Okolie had the opportunity to call him as a witness before Magistrate Jackson but chose not to do so. Also, the facts reveal that the appellant and his counsel were aware of Otoo's presence in the St. Clair County Jail as the Marshals Service inadvertently placed Otoo in the same cell as Okolie. The appellant waited until after Otoo had been sent back to the federal penitentiary to request the production of Otoo. Such an untimely request was too late to retrieve Otoo and the court ordered the hearing to proceed. The court was presented copies of Otoo's grand jury testimony and other statements of Otoo and found that such material was consistent with the magistrate's report. Therefore, the appellant had sufficient opportunity to secure Otoo's presence at both hearings and failed to do so. Such failure demonstrates that an evidentiary hearing was not necessary under the circumstances.

For the foregoing reasons, we affirm the district court's order denying appellant's motion to dismiss and affirm appellant's convictions.